**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**CASE NO. _____**

**JUSTIN MICHAEL WOLFE,**

    **Petitioner,**

**v.**

**HAROLD W. CLARKE, DIRECTOR,
VIRGINIA DEPARTMENT OF
CORRECTIONS,**

    **Respondent.**

---

**PETITION FOR A WRIT OF HABEAS CORPUS**

---

Sylvia H. Walbolt*
James E. Parker-Flynn*
**CARLTON FIELDS, P.A.**
215 South Monroe Street, Suite 500
Tallahassee, Florida 32301-1866
Telephone:  (850) 224-1585
Facsimile:  (850) 222-0398
swalbolt@carltonfields.com
jparker-flynn@carltonfields.com

David A Karp*
Rachel A. Oostendorp*
**CARLTON FIELDS, P.A.**
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055
dkarp@carltonfields.com
roostendorp@carltonfields.com

Scott M. Abeles*
Eugene J. Rossi, Va Bar No. 93136
**CARLTON FIELDS, P.A.**
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8100
sabeles@carltonfields.com
grossi@carltonfields.com

*Pro Hac Vice Applications to Follow    *Attorneys for Petitioner*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................................... 4

    A.    Wolfe Obtains Habeas Relief For A Conviction Condemned As "Abhorrent To The Judicial Process" ............................................................................ 4

    B.    The Commonwealth Retaliates By Intimidating A Witness Into Silence .............. 5

    C.    The Commonwealth Retaliates By Tripling The Charges Against Wolfe ............. 6

    D.    The Virginia Trial Court Allows The Vindictive Prosecution To Proceed ........... 7

    E.    The Virginia Court Of Appeals Arbitrarily Withholds Relief .............................. 8

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT AND GROUNDS FOR RELIEF ...................................................................... 10

I.    THE COMMONWEALTH VINDICTIVELY PROSECUTED WOLFE ....................... 10

    A.    The Commonwealth "Upped The Ante" After Wolfe Obtained Habeas Relief ...................................................................................................... 11

    B.    The Commonwealth Failed To Rebut The Presumption Of Vindictiveness ........ 14

II.    THIS COURT IS AUTHORIZED TO REACH THE MERITS .................................... 15

    A.    Rule 5A:18 Did Not Apply .................................................................... 15

        1.    This Court Is Authorized To Determine If A Default "Actually Occurred" .............................................................................. 16

        2.    No Default Actually Occurred ............................................... 18

    B.    Rule 5A:18, As Applied, Is Not An "Adequate And Independent" Procedural Bar ................................................................................... 20

        1.    Rule 5A:18 Is Not "Adequate" ............................................. 21

# TABLE OF CONTENTS
(continued)

*Page*

        2.     Rule 5A:18 Is Not "Independent" ............................................................. 23

    C.    Cause And Prejudice Excuse Any Default .......................................... 24

        1.     If This Court Finds A Forfeiture, Trial Counsel Was Deficient .............. 25

        2.     If This Court Finds A Forfeiture, Wolfe Has Been Prejudiced ............... 26

III.    IF THIS COURT DECLINES TO REACH THE MERITS, THE SIXTH AMENDMENT HAS NECESSARILY BEEN VIOLATED ........................................... 26

    A.    Trial Counsel Fell Short Of Sixth Amendment Requirements ............................ 26

    B.    Plea Counsel Fell Short Of Sixth Amendment Requirements .............................. 27

        1.     Plea Counsel Unreasonably Advised Wolfe .............................................. 27

        2.     Plea Counsel's Misadvice Was Prejudicial .............................................. 28

IV.    CONCLUSION AND REQUEST FOR RELIEF ............................................. 30

ATTORNEY'S VERIFICATION ............................................... 31

EXHIBIT LIST ............................................................ 32

## <u>TABLE OF AUTHORITIES</u>

*Page*

**Cases**

*Ake v. Oklahoma*,
    470 U.S. 68 (1985)......................................................................................................24

*Allen v. Commonwealth*,
    549 S.E.2d 652 (Va. Ct. App. 2001)...........................................................14, 21, 22, 23

*Bailey v. Nagle*,
    172 F.3d 1299 (11th Cir. 1999) .................................................................................18

*Barnes v. Thompson*,
    58 F.3d 971 (4th Cir. 1995) .......................................................................................16

*Blackledge v. Perry*,
    417 U.S. 21 (1974)............................................................................................ *passim*

*Brown v. Lee*,
    319 F.3d 162 (4th Cir. 2003) ...........................................................................20, 21, 22, 24

*Brown v. United States*,
    2014 WL 12695381 (D.S.C. 2015)......................................................................28, 29

*Chamberlain v. Clarke*,
    2021 WL 4487606 (W.D. Va. Sept. 30, 2021) ........................................................24

*Class v. United States*,
    138 S. Ct. 798 (2018)........................................................................................ *passim*

*Coleman v. Thompson*,
    501 U.S. 722 (1991)..............................................................................................23, 24

*Conaway v. Polk*,
    453 F.3d 567 (4th Cir. 2006) ....................................................................................23

*Douglas v. State of Ala.*,
    380 U.S. 415 (1965)..................................................................................................20

*Duck v. Commonwealth*,
    383 S.E.2d 746 (Va. Ct. App. 1989)....................................................................... *passim*

*Everett v. Clarke*,
    2018 WL 3199466 (W.D. Va. June 29, 2018) .........................................................16

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>*Page*</u>

*Ferrara v. United States*,
   456 F.3d 278 (1st Cir. 2006) ........................................................................29

*George v. Commonwealth*,
   667 S.E.2d 779 (Va. 2008) ...........................................................................20

*Grundler v. State of N.C.*,
   283 F.2d 798 (4th Cir. 1960) ...............................................................3, 15, 16, 17

*Hodge v. Haeberlin*,
   579 F.3d 627 (6th Cir. 2009) ........................................................................18

*Holloway v. Horn*,
   355 F.3d 707 (3d Cir. 2004) .........................................................................16

*James v. Kentucky*,
   466 U.S. 341 (1984) ..................................................................................16

*Justus v. Murray*,
   897 F.2d 709 (4th Cir. 1990) ........................................................................22

*Kent v. Kuplinski*,
   702 F. App'x 167 (4th Cir. 2017) ...................................................................21

*Lambert v. Clarke*,
   2016 WL 1245009 (E.D. Va. Mar. 22, 2016) .......................................................15

*Lee v. Kemna*,
   534 U.S. 362 (2002) ..............................................................................18, 20

*Lyons v. Brady*,
   666 F.3d 51 (1st Cir. 2012) .......................................................................3, 17

*Mahrt v. Beard*,
   849 F.3d 1164 (9th Cir. 2017) ...................................................................27, 28

*Menna v. New York*,
   423 U.S. 61 (1975) ...................................................................................17

*Martinez v. Ryan*,
   566 U.S. 1 (2012) ....................................................................................24

*Monroe v. Angelone*,
   323 F.3d 286 (4th Cir. 2003) ....................................................................10, 26

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>*Page*</u>

*North Carolina v. Pearce*,
    395 U.S. 711 (1969)................................................................................17

*Reid v. True*,
    349 F.3d 788 (4th Cir. 2003) ..............................................................21

*Scialdone v. Commonwealth*,
    689 S.E.2d 716 (Va. 2010).............................................................18, 20

*Sharpe v. Bell*,
    593 F.3d 372 (4th Cir. 2010) ..............................................................16

*Sivak v. Hardison*,
    658 F.3d 898 (9th Cir. 2011) ..............................................................16

*Skipper v. French*,
    130 F.3d 603 (4th Cir. 1997) ..........................................................23, 24

*Stockton v. Virginia*,
    852 F.2d 740 (4th Cir. 1988) ..............................................................15

*Strickland v. Washington*,
    466 U.S. 668 (1984)........................................................................26, 27

*Thomas v. Davis*,
    192 F.3d 445 (4th Cir. 1999) ..............................................................22

*Trevino v. Texas*,
    50 U.S. 562 (1992)...............................................................................20

*United States v. Akande*,
    956 F.3d 257 (4th Cir. 2020) ..........................................................27, 28

*United States v. Akinsade*,
    686 F.3d 248 (4th Cir. 2012) ..........................................................27, 29

*United States v. Andrews*,
    633 F.2d 449 (6th Cir. 1980) ..........................................................14, 15

*United States v. Carthorne*,
    878 F.3d 458 (4th Cir. 2017) ..............................................................25

*United States v. Fisher*,
    711 F.3d 460 (4th Cir. 2013) ..........................................................29, 30

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>*Page*</u>

*United States v. Freeman,*
    24 F.4th 320 (4th Cir. 2022).  ......................................................................25, 26

*United States v. Jamison,*
    505 F.2d 407 (D.C. Cir. 1974) ...........................................................12, 13, 14, 15

*United States v. Johnson,*
    537 F.2d 1170 (4th Cir. 1976) ........................................................... *passim*

*United States v. LaDeau,*
    734 F.3d 561 (6th Cir. 2013) ..................................................................13

*United States v. Meyer,*
    810 F.2d 1242 (D.C. Cir. 1987) ..............................................................13

*United States v. Santana,*
    352 F. App'x 867 (4th Cir. 2009) ............................................................14

*United States v. White,*
    366 F.3d 291 (4th Cir. 2004) ..................................................................27

*United States v. Williamson,*
    183 F.3d 458 (5th Cir. 1999) ..................................................................25

*United States v. Wilson,*
    262 F.3d 305 (4th Cir. 2001) .........................................................10, 13, 14, 17

*United States v. Woods,*
    305 F. App'x 964 (4th Cir. 2009) ............................................................15

*Walker v. Martin,*
    562 U.S. 307 (2011) .............................................................................18

*Weeks v. Angelone,*
    176 F.3d 249 (4th Cir. 1999) ..................................................................24

*West v. Commonwealth,*
    597 S.E.2d 274 (Va. Ct. App. 2004) .........................................................18

*Williams v. Taylor,*
    529 U.S. 362 (2000) ..............................................................................9

*Wolfe v. Clarke,*
    819 F. Supp. 2d 538 (E.D. Va. 2011) (*Wolfe I*), ..............................................1, 7, 9

## TABLE OF AUTHORITIES
(continued)

*Page*

*Wolfe v. Clarke*,
    691 F.3d 410 (4th Cir. 2012) (*Wolfe II*)................................................................1, 4, 5, 11

*Wolfe v. Clarke*,
    2012 WL 13103658 (E.D. Va. Dec. 26, 2012) (*Wolfe III*) ...........................................13, 29, 30

*Wolfe v. Clarke*,
    718 F.3d 277 (4th Cir. 2013) (*Wolfe IV*) .......................................................................5, 6, 7

*Wolfe v. Virginia*,
    2018 WL 6012696 (U.S. Nov. 13, 2018)..........................................................................8, 23

*Woodfolk v. Maynard*,
    857 F.3d 531 (4th Cir. 2017) .................................................................................................18

*Yeatts v. Angelone*,
    166 F.3d 255 (4th Cir. 1999) .................................................................................................20

**Constitution, Statutes, and Rules**

28 U.S.C. § 2254................................................................................................................................9

U.S. Const. amend. V........................................................................................................................1, 6

U.S. Const. amend. VI ...................................................................................................... *passim*

Va. Code § 18.2-12.1 ......................................................................................................................12

Va. Code § 18.2-248 ........................................................................................................................12

Va. Code § 19.2-303 ........................................................................................................................12

Va. Sup. Ct. Rule 5A:18 .................................................................................................. *passim*

**Other Authorities**

2 Randy A. Hertz & James S. Liebman,
    *Federal Habeas Corpus Practice and Procedure* § 26.2[c] (7th ed. 2017) .............................16

## <u>INTRODUCTION</u>

> The Court finds [the Commonwealth's conduct] not only unconstitutional
> in regards to due process, but abhorrent to the judicial process.

*Wolfe v. Clarke*, 819 F. Supp. 2d 538, 566 n.24 (E.D. Va. 2011) (*Wolfe I*) (granting habeas relief),
*aff'd*, 691 F.3d 410, 424 (4th Cir. 2012) (*Wolfe II*)

*       *       *

After the Fourth Circuit affirmed this Court's award of habeas relief to Petitioner Justin Michael Wolfe, the Commonwealth of Virginia retaliated. Just a day after the Fourth Circuit's mandate issued, the prosecutors this Court so harshly critiqued paid a visit in prison to Owen Barber, whose testimony at trial helped convict Wolfe, and whose recantation during habeas proceedings exonerated him. The prosecutors effectively threatened to have Barber executed because of this turn of events, while lamenting the professional "embarrassment" he had caused them. This intimidation worked, as Barber invoked his Fifth Amendment rights ever after.

This petition primarily concerns what happened next. Just two days after the Barber interview, the prosecutors withdrew. Instead of seeking to have the case randomly assigned to a new prosecutor, they conscripted an ally from Fairfax County, who quickly brought in six new charges, on top of the original three, dramatically increasing the range of potential penalties Wolfe would face at retrial. The new prosecutor did so though neither he nor anyone else had undertaken *any* new investigation during the *ten* year stretch between Wolfe's 2002 conviction and 2012, when the new charges were brought in.

Wolfe moved the Virginia circuit court to dismiss the indictments on textbook grounds of vindictive prosecution. Ex. A. That claim turns on whether the government has retaliated against the accused *because* he has exercised a fundamental constitutional right, that of appeal. Deterrence is so important to the healthy functioning of the criminal justice system that establishing a "*likelihood* of vindictiveness" and "the *apprehension* of retaliation," which "*may* deter a

defendant from appealing" makes out a claim. *See United States v. Johnson*, 537 F.2d 1170, 1175 (4th Cir. 1976) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).[1]

On the face of the old and new indictments, and in light of his success at habeas, Wolfe readily established a presumption of vindictiveness under Virginia's leading case, *Duck v. Commonwealth*, 383 S.E.2d 746 (Va. Ct. App. 1989), which in turn interprets and applies the U.S. Supreme Court's landmark case, *Blackledge*. The Commonwealth argued its conduct could not be presumed vindictive because "a convicted capital murder defendant *cannot* be chilled from appealing" because no penalty is more severe than death. *See* Ex. B at 7, 8. This implicit "death-penalty exception" to vindictive prosecution claims was not just dystopian, but irreconcilable with *Duck*, which holds that under *Blackledge*, exposure to a "greater minimum" penalty, or "penalty range," after an appeal is presumptively vindictive. *Duck*, 383 S.E.2d at 748-49.

Nonetheless, the trial court accepted the argument and denied Wolfe's motion. Ex. C at 194-95. It also denied a motion to dismiss based on the neutralizing of Owen Barber as an exculpatory witness. Ex. D. In sum, following Wolfe's successful challenge, the Commonwealth intimidated Wolfe's main retrial witness into silence and tripled the number of charges (from three to nine) he had to defend without that witness. With the new misconduct having achieved its aims, Wolfe pleaded guilty to avoid a death sentence. Ex. G. He was sentenced to 83 years in prison, with 42 years suspended, and ordered to pay costs of approximately $871,000.00. Ex. E at 2.

Wolfe appealed his conviction. Ex. H. His appeal traveled twice through Virginia's appellate courts, and included a successful petition to the U.S. Supreme Court. The bottom line, however, is that although the trial court unreasonably applied U.S. Supreme Court and Virginia precedent alike, its decision was left intact on procedural grounds. In particular, the Virginia Court

---

[1] Unless otherwise indicated, all emphasis is added and internal citations and quotations omitted.

of Appeals invoked local Rule 5A:18, which provides that "[n]o ruling of the trial court ... will be considered as a basis for reversal unless" objected to "at the time of the ruling," and claimed Wolfe forfeited a dispositive argument under *Duck*, and with it his constitutional rights. Ex. K at 8.

The trial court's merits determination, and the Court of Appeals' finding of default, left the Commonwealth's clearly unconstitutional payback unremedied. Wolfe's constitutional claims therefore present a proper vehicle for habeas relief. They unambiguously have merit, and Rule 5A:18 is no bar to reaching them.

A presumption of vindictiveness follows if the government "up[s] the ante" after a successful appeal, and may be drawn from the face of the indictments. *Johnson*, 537 F.2d at 1172. The ***tripling*** of charges against Wolfe, and the new charges' far broader sentencing ranges, satisfies *Blackledge's* requirements. *See* Section I(A), *infra*. The Commonwealth's theory that a defendant who succeeds in overturning a death-penalty conviction "cannot" be vindictively prosecuted turns constitutional jurisprudence on its head, and does not rebut this presumption. *See* Section I(B).

This Court can find the trial court's decision is contrary to, and an unreasonable application of, Supreme Court precedent because Rule 5A:18 does not bar its review.

*First,* Rule 5A:18 did not apply. Because vindictive prosecution implicates fundamental fairness and structural constitutional guarantees, this Court is authorized to determine whether Rule 5A:18 actually applied. *Grundler v. State of N.C.*, 283 F.2d 798, 802 (4th Cir. 1960) (district courts may correct dispositions on state law grounds "in circumstances impugning ***fundamental fairness*** or infringing specific constitutional protections"); *Lyons v. Brady*, 666 F.3d 51, 56 & n.9 (1st Cir. 2012) ("[t]he Supreme Court has defined the category of infractions that violate ***fundamental fairness*** very narrowly. … Some examples include … ***vindictive prosecution***") (cleaned up). This Court's review will confirm Wolfe preserved his claim. *See* Section II(A).

*Second*, as applied, Rule 5A:18 is not an "adequate and independent" rule of procedure. Adequacy turns on whether a bar has been applied consistently to a ***particular*** claim in a ***particular*** procedural posture. The Virginia Court of Appeals appears to have addressed vindictive prosecution claims in the same posture as Wolfe's twice before, and ***excused*** default each time. *See* Section II(B)(1). Rule 5A:18, moreover, is not "independent" because it was applied in response to a remand order by the U.S. Supreme Court to reconcile an earlier opinion of the court with federal due process. Though the court ultimately invoked a state procedural bar, its disposition was interwoven with the resolution of a federal question. *See* Section II(B)(2).

*Third*, this Court should reach the merits because Wolfe has cause for, and suffered prejudice from, any default. If Wolfe truly defaulted his winning argument, his trial counsel was constitutionally ineffective, to Wolfe's prejudice. *See* Section II(C).

*Finally*, should this Court decline to reach the merits, it should vacate Wolfe's sentence under the Sixth Amendment. If Wolfe forfeited his winning argument, his trial counsel was constitutionally ineffective, *see* Section III(A), as was his plea counsel, for failing to reasonably counsel Wolfe to ensure his powerful claims were preserved for appeal. *See* Section III(B).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     *Wolfe Obtains Habeas Relief For A Conviction Condemned As "Abhorrent To The Judicial Process"*

In 2001, a grand jury indicted nineteen-year-old Justin Wolfe on three charges – (1) conspiracy to distribute marijuana, (2) use or display of a firearm in the commission of a felony, and (3) capital murder for hire – on the Commonwealth's theory that Wolfe hired his friend and fellow marijuana-dealer, Owen Barber, to kill a supplier named Daniel Petrole. At trial, the only direct evidence against Wolfe was Barber's testimony that Wolfe hired him to kill Petrole. Wolfe was convicted of murder and other charges and sentenced to death. *Wolfe II*, 691 F.3d at 412-13.

During habeas proceedings, evidence of extraordinary prosecutorial misconduct came to light. The prosecutors did not conduct a proper investigation, quickly concluded Wolfe was guilty, and ignored evidence that contradicted their case theory. *See id.* at 417, 426 n.9. They suppressed a mountain of exculpatory evidence. *See id.* at 418 n.7. The suppression was "entirely intentional." *Id.* at 423. They admitted they made it a practice to withhold exculpatory evidence to ensure defendants cannot "fabricate" a defense. *Id.* at 423-24. Barber recanted his 2002 trial testimony, and swore Wolfe had no involvement in the murder. This Court found his testimony "persuasive." *Id.* at 418. Barber's testimony confirmed this Court's earlier conclusion that "it was 'more likely than not that no reasonable juror would have found Wolfe guilty.'" *Id.* at 414-15.

The Fourth Circuit affirmed, reiterating that the Commonwealth's conduct had been "not only unconstitutional in regards to due process, but abhorrent to the judicial process." *Id.* at 424. It reprimanded the Commonwealth for "tenaciously conceal[ing]" exculpatory evidence. *Id* at 422. It felt "compelled to acknowledge that the Commonwealth's" violations were "entirely intentional." *Id.* at 423. Describing the prosecutor's rationale for suppressing evidence – so it could not be used "to fabricate a defense" – as "flabbergasting," it found this Court had "rightly lambasted" the Commonwealth. *Id.* "We sincerely hope," the Court concluded, "that the Commonwealth's Attorney and his assistants have finally taken heed of those rebukes." *Id.* at 424.

### B.   *The Commonwealth Retaliates By Intimidating A Witness Into Silence*

The Commonwealth did not take heed. The Fourth Circuit's mandate in *Wolfe II* issued on September 10, 2012. The next day, the Commonwealth's Attorney and his assistant, and the lead investigator, Sam Newsome, "interviewed" Barber at the Augusta Correctional Center. During the interview, the officials "attempted to coerce Barber to repeat his 2002 trial testimony upon retrial – the same testimony that the district court found 'contained falsities.'" *Wolfe v. Clarke*, 718 F.3d 277, 281-82 (4th Cir. 2013) (*Wolfe IV*). They suggested that Barber's testimony at habeas "was

inconsistent with his trial testimony," so "he had breached his plea agreement." *Id.* at 282. They claimed the supposed breach could subject him to "the death penalty." *Id.*

They also complained that the reversal of Wolfe's case had "soiled" their "reputations." Ex. N at 59. They invoked scripture, and Barber's recently deceased mother and ill father, to coerce Barber into abandoning the testimony this Court credited on habeas in favor of the judicially condemned testimony from the original trial. *Wolfe IV*, 718 F.3d at 297-98. Doing so was the "pinnacle" of the Commonwealth's misconduct. *Id.* at 295 (Thacker, J. concurring in part).

Wolfe brought the Barber interview to this Court's attention, which then ordered the Commonwealth to show cause why the Barber interview "does not constitute extraordinary circumstances warranting the Court to order [Wolfe's] immediate release and bar current and future prosecutions of Wolfe." *Id.* at 283. At a hearing the following week, Barber's lawyer advised that Barber would invoke the Fifth Amendment at Wolfe's retrial. *Id.* at 283-84.

As this Court would find, "the Original Prosecuting Team has scared Barber into invoking his Fifth Amendment right to avoid self-incrimination," and thereby "denied Petitioner a credible direct and rebuttal witness to defend himself from the charges he faces." *Wolfe v. Clarke*, 2012 WL 13103658, *13 (E.D. Va. Dec. 26, 2012) (*Wolfe III*). The interview "incurably frustrated the entire purpose" of the federal habeas proceedings, and "permanently crystalized" the constitutional violations infecting Wolfe's trial, warranting Wolfe's release and a bar on a new trial. *Id.*

On appeal, the Fourth Circuit reversed this Court's **remedy** for the violations, asserting that a retrial bar was too severe a sanction. *Wolfe IV*, 718 F.3d at 290. But it added that this misconduct "could, at the proper time, constitute a separate ground for federal habeas corpus relief." *Id.*

### C.      *The Commonwealth Retaliates By Tripling The Charges Against Wolfe*

Two days after the Barber interview, the prosecutors recused themselves. *Wolfe III*, 2012 WL 13103658, at *8. One day later, the new prosecutor they selected told the circuit court that he

had already concluded that Wolfe "was absolutely involved in this murder and planned it and caused it to occur and he did it out of greed . . . . Justin Wolfe is many things but innocent is not one of them." Ex. O at 24. He admitted he had only reviewed files from the tainted first trial. *Id.*

On October 1, 2012, without new investigation, the prosecutor presented new charges to a grand jury, which returned six more indictments in addition to the original three, consisting of:

- Two new and additional drug charges;
- One new and additional capital murder charge;
- One new and additional felony murder charge;
- One new and additional charge for use of a firearm during a robbery; and
- One new and additional charge for use of a firearm in the commission of a murder.

*Wolfe IV*, 718 F.3d at 282. In sum, following habeas relief, Wolfe faced three counts of murder, three firearms charges, and three drug charges. He had faced just one of each at the original trial.[2]

### D.  The Virginia Trial Court Allows The Vindictive Prosecution To Proceed

Wolfe moved to dismiss in the Virginia circuit court, arguing the new indictments were unconstitutionally vindictive. Ex. A. In briefing and at oral argument, Wolfe identified the key Supreme Court and Virginia cases establishing that the analysis of vindictive prosecution depends on the totality of the circumstances, and expressly permits finding a presumption of vindictiveness when, following appeal, a defendant is exposed to a higher mandatory ***minimum*** penalty, or greater ***range*** in sentencing, even if a new charge or charges do ***not*** carry a more severe penalty than a prior charge. Ex. A at 6-12, Ex. C at 173-76, 178-79, 187-88.

The Commonwealth defended by asserting that a new prosecutor, not those castigated by this Court and the Fourth Circuit, brought in the new charges. Despite conceding that the controlling Virginia case on vindictive prosecution found a presumption warranted when a

---

[2] Wolfe expressly adopts and incorporates into this Petition the findings in *Wolfe I—IV*.

defendant was subject to "an increased penalty *range*" following appeal, it also claimed that it is "unreasonable to attach any presumption of prosecutorial vindictiveness to a convicted capital felon facing death," regardless of the nature or magnitude of the new charges. Ex. B at 5, 6-7. The trial court credited the latter argument, finding a presumption unwarranted because Wolfe did not face a more severe penalty than death under the new charges. Ex. C at 194-95.

Wolfe also moved to dismiss the charges on prosecutorial misconduct grounds in light of the Barber interview. Ex. D. The circuit court deemed that concern premature, and denied the motion. *See* Ex. K at 10-11.

### E.    The Virginia Court Of Appeals Arbitrarily Withholds Relief

Concluding he had no hope of a fair trial, Wolfe pled guilty to use of a firearm in the commission of a felony, conspiracy to distribute marijuana, and murder. Ex. G. Wolfe then immediately appealed, asserting the trial court erred in accepting his guilty plea because (i) he was the target of vindictive prosecution; and (ii) the Barber interview constituted misconduct that resulted in the elimination of exculpatory evidence and rendered Wolfe's plea involuntary. Ex. H at 7-11, 11-15. The Virginia Court of Appeals refused to consider these arguments, concluding that, because Wolfe's guilty plea was not conditional, Wolfe had waived them. Ex. E. at 3-4.

After the Virginia Supreme Court refused Wolfe's petition, Ex. I, Wolfe filed a petition for certiorari with the U.S. Supreme Court in August 2018. Opposing the petition, the Commonwealth asserted that the Virginia courts' decision rested "upon an adequate and independent state ground that deprives this Court of jurisdiction," namely Rule 5A:18. *See Wolfe v. Virginia*, 2018 WL 6012696, at *5 (U.S. Nov. 13, 2018)). In January 2019, rejecting the Commonwealth's arguments, the Supreme Court granted certiorari. It vacated the judgment and remanded to Virginia "for further consideration in light of *Class v. United States*," a new decision holding squarely that a guilty plea does not waive the right to assert a vindictive prosecution claim on appeal. Ex. J.

On remand, the Virginia Court of Appeals held that, in light of *Class*, Wolfe **could** raise the vindictive prosecution claim despite his guilty plea. Ex. K at 10. But it claimed Wolfe forfeited the argument presented on appeal. *Id.* Invoking Rule 5A:18 again, the court focused on Wolfe's alleged failure to raise below a key passage in *Duck* that established unequivocally that a harsher maximum sentence was not required. *Id.* at 9-10. It also faulted Wolfe for not obtaining a ruling on a motion for reconsideration Wolfe had filed, which featured *Duck's* most persuasive passage. *Id.* at 9. The court also held that Wolfe's prosecutorial misconduct claim was waived by the guilty plea. *Id.* at 10-11.

Without reasoning, the Virginia Supreme Court denied Wolfe's petition for appeal. Ex. L. On June 21, 2021, the U.S. Supreme Court denied Wolfe's petition for certiorari. Ex. M.

## LEGAL STANDARD

A state prisoner may apply for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws … of the United States." *Wolfe I*, 819 F. Supp. 2d at 545 (quoting 28 U.S.C. § 2254). When a state court has resolved a federal question, a federal habeas court should grant relief if it finds the decision is "contrary to" or "an unreasonable application of" federal law, based on an independent review. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A decision is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. A decision is an "unreasonable application" of federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Where "a state court has not considered a properly preserved claim on its merits, a federal court must assess the claim de novo." *Monroe v. Angelone*, 323 F.3d 286, 297 (4th Cir. 2003).

## ARGUMENT AND GROUNDS FOR RELIEF

The Commonwealth's vindictive prosecution of Wolfe was the culmination of years of misconduct. Wolfe readily meets the standard for establishing a presumption of vindictiveness under binding Supreme Court precedent, and no procedural bar precludes review. Rule 5A:18 does not apply on this record, and because of the special nature of vindictive prosecution, settled Fourth Circuit case law permits this Court's review. Rule 5A:18, moreover, is not "adequate" because it is not consistently enforced by Virginia courts to bar vindictive prosecution claims, and is not "independent" because the Court of Appeals' holding was interwoven with the resolution of a federal question. If forfeiture is otherwise enforceable, cause and prejudice excuse it.

If this Court does not reach the merits, it should vacate Wolfe's conviction on Sixth Amendment grounds: as to trial counsel, if she forfeited Wolfe's winning argument; and as to plea counsel, for failing to advise Wolfe regarding preservation of his extraordinarily powerful claims.

## I.   THE COMMONWEALTH VINDICTIVELY PROSECUTED WOLFE

It is "well established" that a prosecutor violates due process "by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). The touchstone of this claim is a finding that a State has "upp[ed] the ante" by bringing a defendant into court to face "more serious" charges after the defendant has successfully appealed. *Blackledge*, 417 U.S. at 27-28, 29; *Johnson*, 537 F.2d at 1172 ("if the prosecutor has the means readily at hand to discourage such appeals by 'upping the ante' . . . the State can insure that only the most hardy defendants will" appeal) (quoting *Blackledge*, 417 U.S. at 27-29). Such "conduct amounts to vindictive prosecution and is unconstitutional." *Wilson*, 262 F.3d at 314.

Vindictive prosecution may be established by showing "genuine animus," or through evidence that enhanced charges "pose a realistic likelihood of 'vindictiveness' ... from which an improper vindictive motive may be presumed." *Id*. In the only decision on the merits of Wolfe's claim, the trial court found Wolfe had not established a presumption because Wolfe was not subject to a higher maximum penalty under the new set of charges. Ex. C at 194-95. Its determination is squarely contradicted by Supreme Court case law, and cannot stand.

### A.    The Commonwealth "Upped The Ante" After Wolfe Obtained Habeas Relief

The circumstances immediately preceding the instigation of the six new charges bear revisiting. *See Johnson*, 537 F.2d at 1173 ("we must examine all circumstances of [the defendant's] situation" when assessing vindictiveness). This Court "rightly lambasted" the Commonwealth for its abhorrent misconduct. *Wolfe II,* 691 F.3d at 423. The Commonwealth "tenaciously concealed" exculpatory evidence. *Id.* at 422.  Its excuses were "flabbergasting." *Id.* at 423; *see also* Ex. A at 12-17; Ex. C at 17-19, 28, 170-72 (reviewing this history before trial court).

The Commonwealth's prosecutors **admitted** these critiques stung. While interviewing Barber, Detective Newsome claimed that "we" – Newsome and the two prosecutors – "all have a good reputation of integrity." Ex. N. at 55-56. He added that "[i]t's always disturbing when that's called into question." *Id.* at 56. Mr. Conway complained that the "reputations" of those involved had been "soiled." *Id.* at 59.

The two prosecutors withdrew within days. Their handpicked successor almost immediately thereafter reindicted Wolfe, adding the six new charges. The Commonwealth has never maintained that new investigation supported the new charges. Ex. C at 161-62.

The Commonwealth's new charges "upped the ante" within the meaning of *Blackledge*. Wolfe was originally convicted of capital murder, use of a firearm in the commission of a felony, and distribution of marijuana. Even though Wolfe faced the possibility of a life sentence or the

death penalty in both trials, the sentences for the original set of charges were ***not mandatory*** and could have been suspended by the trial court under Va. Code § 19.2-303.

After the new indictments, Wolfe was subject to the penalties of the original charges, but was now also exposed to a ***mandatory*** minimum punishment of 20 years and ***mandatory*** minimum life sentence if convicted of offenses involving the new charges. *See* Va. Code § 18.2-248(H1) and (H2). Specifically, the sentences for charges included in the second indictments carried a mandatory minimum sentence of 20 years for violation of subsection H1, and a mandatory minimum life sentence for violation of subsection H2. By their mandatory nature, neither of those sentences could be suspended by the trial court under Va. Code § 18.2-12.1.

*Duck*, applying *Blackledge*, held that "[t]he fact that Duck was exposed to a greater minimum, rather than maximum, period of incarceration … does not remove his case from the protection of *Blackledge*." 383 S.E.2d at 749. What matters is whether there is a different and greater "penalty range" associated with the new charge or charges; if so, the new charge was "a more serious charge" within the meaning of the holding in *Blackledge*. *Id.* As it reasoned, "[a]n increased minimum potential period of incarceration can have the same chilling effect on a defendant's exercise of his statutory right to appeal as an increased maximum." *Id.* Indeed, even the Commonwealth conceded that *Duck* applied *Blackledge* "and found a presumption … because of an increased penalty range," not because of a higher maximum penalty. Ex. B at 5.

Cases applying the same cases and principles as the trial court have arrived at conclusions contrary to the trial court. In *United States v. Jamison*, 505 F.2d 407 (D.C. Cir. 1974), for example, the relevant change was from second degree to first degree murder, ***both punishable by life imprisonment***. As *Jamison* explained, "*Blackledge **in no way*** relied on the fact that the increase

in charge in that case was from a misdemeanor to a felony." *Id.* at 415. A difference in the ***range***

of sentences, and the higher ***minimum*** sentence threatened by the new charge, sufficed:

> It hardly seems an empty threat that the crime with which one is charged
> may be increased from one carrying a sentence of 'life or not less than
> twenty years,' the prescribed sentence for second degree murder, to one
> carrying a mandatory life sentence … for first degree murder.

*Id.* at 415; *see also United States v. Meyer*, 810 F.2d 1242, 1246-48 (D.C. Cir. 1987) ((though new

charge did not increase potential penalty, presumption of vindictiveness was warranted)

While showing the Commonwealth "upped the ante" suffices to establish a presumption,

the Fourth Circuit teaches that the absence of new investigation cements that presumption. In

*Johnson*, for example, the Fourth Circuit noted that the prosecutor "knew all of the facts essential

for the new indictment before Johnson changed his plea." 537 F.2d at 1173. He only brought new

charges "after Johnson successfully challenged" his conviction. *Id.* Between conviction and the

new indictment, "the government discovered no new evidence to justify the additional charges."

*Id.*; *see also* Ex. C. at 172 (noting no evidence of new investigation).

Here, the Commonwealth has never asserted that it conducted any new investigation during

the ten-year stretch between Wolfe's 2002 conviction and 2012, when the new charges were filed.

Newsome testified that it did not. Ex. C. at 161-62. *See United States v. LaDeau*, 734 F.3d 561,

570 (6th Cir. 2013) (presumption warranted where "the prosecution obtained no [new] evidence"

and new charge "carries longer mandatory minimums and maximums than the" initial charge).

*Finally*, the Fourth Circuit instructs lower courts to consider whether the post-trial

successful appeal resulted in a remand for a new trial on the original charges, or a bar on retrial.

In *Wilson*, the Fourth Circuit canvassed Supreme Court's case law and found that in "each of the

decisions in which it has recognized a presumption of vindictiveness," the Supreme Court relied

on its "awareness 'of the institutional bias inherent in the judicial system against the retrial of

issues that have already been decided.'" 262 F.3d at 318. When a state responds harshly to a successful appeal, the fact that the state is forced to redo its work supports a presumption.

*Wilson* found that the "institutional bias" against retrying claims was not present before it. *Id.* at 319. *Johnson*, in contrast, found this bias ***could*** be at issue in its case, and found a presumption. *Johnson*, 537 F.2d at 1172; *accord Allen v. Commonwealth*, 549 S.E.2d 652, 654 (Va. Ct. App. 2001) ("A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining" a new trial). Wolfe was subject to retrial on the original charges, making his what *Wilson* calls "the ***typical*** presumption case." 262 F.3d at 319.

The circuit court's ruling cannot be sustained under any standard of review. The inquiry under *Blackledge* turns on retaliation following the exercise of a constitutional right and the apprehension such conduct invariably inspires. The Commonwealth's defense that convicts facing the death penalty have no right to complain about vindictive prosecution turns constitutional jurisprudence on its head. Wolfe, and those in his position, have been taught not to bring even egregious misconduct to light. A presumption of vindictiveness is warranted.

### B.   The Commonwealth Failed To Rebut The Presumption Of Vindictiveness

Once a presumption is established, "the burden shifts to the government to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315. "[O]nly objective, on-the-record explanations can suffice." *United States v. Andrews*, 633 F.2d 449, 456 (6th Cir. 1980).

Cases since *Blackledge* show the path to rebutting a presumption is narrow. In *Jamison*, the Court stated that if the government can show "the elements of the more serious crime were not" present when the original charges were filed, a presumption may be rebutted. 505 F.2d at 416. The Fourth Circuit has found a presumption rebutted by "***new*** evidence." *United States v. Santana*, 352 F. App'x 867, 871 (4th Cir. 2009). *Jamison* suggested that the presumption might be rebutted if the ***impact*** of the alleged crime increases after the initial charges are filed, as when an "assault

victim has died." 505 F.2d at 416-17. *Andrews* allowed that evidence "the Grand Jury was unavailable" or a showing of "previous legal impossibility" could suffice. 633 F.2d at 456 & n.10.

The Commonwealth did not offer objective evidence establishing such facts. Its arguments focused on the fact that the original prosecutors withdrew and brought in a special prosecutor. *See* Ex. B at 3; Ex. C at 184-86. The trial court rightly rejected this argument. Ex. C at 194. *Duck* had rejected a similar argument. *See* 383 S.E.2d at 748. "[M]ost successful vindictive prosecution claims involve retaliatory prosecutions by the same ***sovereign***." *United States v. Woods*, 305 F. App'x 964, 967 (4th Cir. 2009). The "sovereign" here has always been the Commonwealth.

The Commonwealth otherwise relied on an implicit death penalty exception to *Blackledge's* coverage. Ex. B at 6-7; *see also* Ex. K at 3. *Blackledge*, *Duck*, and *Jamison* foreclose this argument. As the Commonwealth's defenses are uniformly meritless, this Court should find a presumption of vindictiveness that the Commonwealth failed to rebut.

## II.  THIS COURT IS AUTHORIZED TO REACH THE MERITS

Virginia's appellate courts declined to reach the merits by asserting a state procedural bar, Rule 5A:18. This Court should not defer to that finding.

### A.  *Rule 5A:18 Did Not Apply*

This Court should reach the merits because Wolfe satisfied Virginia's preservation rules. While federal courts often hesitate before reviewing state court dispositions based on state law, the Fourth Circuit recognizes a "limited exception" where "fundamental fairness" or "specific constitutional protections" are imperiled by an arbitrary invocation of a state procedural bar. *See Lambert v. Clarke*, 2016 WL 1245009, at *8 (E.D. Va. Mar. 22, 2016) (citing *Stockton v. Virginia*, 852 F.2d 740, 748 (4th Cir. 1988)); *Grundler*, 283 F.2d at 801-02. That is the case here.

1.    *This Court Is Authorized To Determine If A Default "Actually Occurred"*

"The procedural default doctrine self-evidently is limited to cases in which a 'default'

**actually occurred** – *i.e.*, cases in which the prisoner **actually violated** the applicable state

procedural rule." 2 Hertz & Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.2[c]

(7th ed. 2017) (citing dozens of cases). Courts engage in this inquiry to ensure federal rights are

not infringed arbitrarily by the improvident invocation of a state procedural bar. *See, e.g.*, *Sivak v.

Hardison*, 658 F.3d 898, 907 (9th Cir. 2011) ("we follow the Supreme Court and our sister circuits

in holding that an erroneously applied procedural rule does not bar federal habeas review") (citing,

*inter alia*, *James v. Kentucky*, 466 U.S. 341, 351 (1984)). In *James*, the Court conducted an

"examination" of the "record" and held that "the asserted state-law defect … must be more evident

than it is here" to ensure "petitioner's constitutional rights were respected[.]" *Id.* at 351; *see also

Holloway v. Horn*, 355 F.3d 707, 713 (3d Cir. 2004) ("we find no procedural default;" state

supreme court "believed, (mistakenly) that Holloway had not" preserved his claim).

The Fourth Circuit has sometimes declined on federalism grounds to engage in the inquiry

authorized by cases like *James*. *See, e.g.*, *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995)

(a federal habeas court "does not have license to question a state court's finding of procedural

default" or to question "whether the state court properly applied its own law"); *Sharpe v. Bell*, 593

F.3d 372, 377 (4th Cir. 2010) (same). *Grundler*, likewise, recognized that federal courts should

not "[n]ormally" review such findings, absent "circumstances impugning fundamental fairness or

infringing specific constitutional protections," *Grundler*, 283 F.2d at 802, an exception district

courts recognize. *See Everett v. Clarke*, 2018 WL 3199466, at *4 (W.D. Va. June 29, 2018).

Vindictive prosecution is one of very few claims that implicates those concerns. The

Supreme Court has long recognized – and recently reaffirmed in *Class* – that vindictive

prosecution falls within a narrow category of claims that ordinarily cannot be waived because they

raise a jurisdiction-like question that goes to "'the very power of the State' to prosecute the defendant." *Class v. United States*, 138 S. Ct. 798, 803 (2018). Preserving review of such claims is critical because "penalizing those who choose to exercise constitutional rights" is "patently unconstitutional" and may "chill the exercise of basic constitutional rights." *N. Carolina v. Pearce*, 395 U.S. 711, 724 (1969), *overruled on other grounds*.

*Class* drew primarily on *Blackledge* in concluding that even a knowing plea of guilty does not waive a defendant's right to pursue a vindictive prosecution claim on appeal. 138 S. Ct. at 803-05. In *Blackledge*, notwithstanding the defendant's guilty plea, the Supreme Court held that the vindictive prosecution claim was properly raised in federal habeas proceedings because the defendant was asserting his "right not to be haled into court at all." *Blackledge*, 417 U.S. at 30. *Class* also referenced *Menna v. New York*, involving a claim of double jeopardy, where, as here, the defendant challenged the state's power to prosecute him. *Class*, 138 S. Ct. at 804.

*Class*, *Blackledge*, and *Menna* establish a category of extraordinary claims for which even a knowing guilty plea does not waive a constitutional claim challenging a State's power to prosecute. *Grundler* protects the same due process interests in "fundamental fairness." The First Circuit has explicitly noted that "[t]he Supreme Court has defined the category of infractions that violate **fundamental fairness** very narrowly. … Some examples include … ***vindictive prosecution***." *Lyons*, 666 F.3d at 56 & n.9 (cleaned up) (citing *Blackledge*, 417 U.S. at 27). The Fourth Circuit's view is consistent. *Wilson*, 262 F.3d at 314 (vindictive prosecution "is a due process violation of the most ***basic sort***").

Given these concerns, *Class* and *Grundler* provide exceptions to the ordinary operation of waiver and forfeiture rules, respectively. *Class* does so as to rules that preclude a guilty-pleading defendant from challenging his conviction on a forfeitable ground. *Id*. at 806. *Grundler* does so as

to the ordinary deference accorded state court dispositions based on state law. When fundamental fairness is threatened, ordinary deference to state court default findings is not warranted. *See Lee v. Kemna*, 534 U.S. 362, 376, 394 (2002) ("There are ... exceptional cases in which exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question."); *Woodfolk v. Maynard*, 857 F.3d 531, 547 (4th Cir. 2017) (state court's default finding "constitutes an exorbitant exercise of the state court's discretion").

Because "federal courts must carefully examine state procedural requirements to ensure that they do not operate to discriminate against claims of federal rights," *see Walker v. Martin*, 562 U.S. 307, 321 (2011), this Court should review the arbitrary application of Rule 5A:18. *See also Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (default applies only if "state court ***correctly*** applies a procedural default principle of state law[.]"); *Hodge v. Haeberlin*, 579 F.3d 627, 642 (6th Cir. 2009) (considering "whether the petitioner ***actually*** failed to comply with" state rule).

### 2.    *No Default Actually Occurred*

Virginia case law is clear that defendants are not forced to invoke magic words to preserve objections. *See Scialdone v. Commonwealth*, 689 S.E.2d 716, 726 (Va. 2010) ("however imprecise the vehicle by which the defendants raised their objections, their motions to stay presented their arguments squarely to the circuit court"). Rule 5A:18 requires only that parties make "timely and specific objections" so the trial court can "rule intelligently on the issues presented." *West v. Commonwealth*, 597 S.E.2d 274, 278 (Va. Ct. App. 2004).

In refusing to entertain Wolfe's appeal, the Virginia Court of Appeals concluded that Wolfe forfeited the argument that the new charges "increased the *minimum* punishment to which he could have been subjected upon conviction." Ex. K at 8. That conclusion is not supported by the record.

Wolfe's briefing in the circuit court cited and discussed the leading Virginia case, *Duck v. Commonwealth*, which holds that *Blackledge* applies even though the defendant "was exposed to

a greater minimum, rather than maximum, period of incarceration as a result of the amended charge ..." 383 S.E.2d at 749; Ex. A at 7. *Duck* provides further that a "difference in penalty range" qualifies as a more "serious" charge "within the meaning of *Blackledge*." *Duck*, 383 S.E.2d at 749. The Commonwealth's opposition brief conceded this point. Ex. B at 5.

At the hearing, Wolfe's counsel specifically argued that the new charges were more serious because they threatened an increase in the mandatory minimum and overall penalty range:

> The [original] conspiracy to distribute marijuana is five to thirty and the [shortest of the new charges] is twenty to life.
>
> *
>
> [The new charges were] absolutely punished at a higher level than the [original 2001] conspiracy to distribute marijuana was.
>
> *
>
> The H2 is a life charge unless you cooperate with police in which case the Court, in its discretion, can reduce the sentence down to forty years.
>
> *
>
> So what do we have? Conspiracy to distribute marijuana from twelve years ago or continuing criminal enterprise which has a life sentence.

Ex. C at 172-73, 192. Wolfe's counsel then argued that the circumstances were sufficient to give rise to a presumption of prosecutorial vindictiveness under *Blackledge* and *Duck*:

> Mr. Wolfe exercised his Constitutional rights and the scenario we find ourselves falls directly under *Blackledg*[e]. ***And it doesn't have to simply be a higher punishment.***
>
> *
>
> The argument that because this is a capital case and there is no greater harsher punishment is also without merit.
>
> *
>
> [B]y the Commonwealth's argument, they can charge everything they want on the drugs because you know, he could get executed for the murder so there's no greater punishment….we all know there's the solid chance … the murder charge goes nowhere.
>
> *
>
> [T]o say … there's no presumption against vindictiveness because he was facing the full specter of punishment to begin with … is to completely ignore … the rationale that the Supreme Court has said that that squelches somebody's right to avail themselves of all their possible remedies.

Ex. C at 180-81, 187-89, 190-93; *see also id.* at 181, 187 (arguing that the "cumulative effect" of the new charges should be considered). Wolfe's counsel also questioned Detective Newsome on the issue of increased minimum sentencing risk. *E.g.*, Ex. C at 158-59.

The trial court heard Wolfe's argument regarding the increased severity of Wolfe's potential minimum sentence, and the increase in the applicable penalty range, and had every opportunity to "rule intelligently on the issue," which is all that Virginia law requires. *Scialdone*, 689 S.E.2d at 725. It ruled on the merits, albeit erroneously. Whether Wolfe's trial counsel could have **better** articulated discreet passages from *Duck* is not the question. Virginia law does not require perfection. *See Scialdone*, 689 S.E.2d at 726; *George v. Commonwealth*, 667 S.E.2d 779, 782 (Va. 2008) (though he did not use term "fatal variance" in his objection to trial, the objection was clear enough). *Duck* was explicitly relied on by Wolfe, as well as the Commonwealth, and then by the trial court, and its reasoning and reach appears on its face. This Court should review the relevant record, find no default occurred, and reach the merits. *See Kemna*, 534 U.S. at 366-63, 385 (examining record and rejecting state court's default finding); *Trevino v. Texas*, 50 U.S. 562, 566-67 (1992) (same); *Douglas v. State of Ala.*, 380 U.S. 415, 420-21 (1965) (same).

### B.   *Rule 5A:18, As Applied, Is Not An "Adequate And Independent" Procedural Bar*

A default must rest on "an independent and adequate state procedural rule." *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003). This inquiry is "a question of federal, not state, law." *Id.* at 169. A rule is "adequate" if it is "regularly or consistently applied by the state court," and "independent" if it does not "depend[ ] on a federal constitutional ruling." *Id*. Because procedural default is an affirmative defense, the Commonwealth must prove the adequacy and independence of Rule 5A:18 as applied. *See Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999).

1.      *Rule 5A:18 Is Not "Adequate"*

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." The Fourth Circuit teaches that in the adequacy inquiry, courts must consider not only the rule in general but how it is applied in the particular circumstances of a given case. *See Reid v. True*, 349 F.3d 788, 805 (4th Cir. 2003) ("that a state procedural rule is adequate in general does not answer the question of whether the rule is adequate as applied in a particular case."). Thus, the fact that courts have found this Rule "adequate" when applied in cases involving very distinguishable circumstances does not control. *E.g. Kent v. Kuplinski*, 702 F. App'x 167, 169 (4th Cir. 2017).

*Brown*, for example, noted that it had found the same rules at issue there (similar to Rule 5A:18) were "independent and adequate," but that did not "end [the] inquiry." 319 F.3d at 170. The inquiry turns on "whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous-here, cases in which *the particular claim* raised could have been raised previously but was not." *Id.* at 170 (emphasis in original). *Brown* found that North Carolina state courts "have not regularly and consistently applied" the relevant rule to bar the "unanimity claims" at issue there, and held the rule inadequate. *Id.* at 175.

Virginia's appellate courts appear to have considered the application of Rule 5A:18 to a vindictive prosecution claim brought following conviction at trial, an appeal, and the instigation of new charges just twice – in *Duck* and *Allen*. In each case, the courts found petitioners forfeited their claims, but ***declined*** to enforce Rule 5A:18, ruling for each petitioner on the ***merits***. *See Duck*, 383 S.E.2d at 748 ("[W]e are presented with an issue involving the denial of a fundamental constitutional right, that of due process. Despite Duck's failure to raise this precise objection in the trial court, we consider it here because under the facts and circumstances of this case, a manifest

injustice has occurred."); *Allen*, 549 S.E.2d at 654 (same). *Duck* and *Allen* affirmatively establish that Virginia courts do ***not*** regularly and consistently apply Rule 5A:18 to hold that vindictive prosecution claims brought following trial and appeal have been forfeited.

For purposes of adequacy, it does not matter that Wolfe did not invoke Rule 5A:18's ends-of-justice exception, while the defendants in *Duck* and *Allen* did. *Brown* is again instructive. At the relevant time, the rule in *Brown* provided that courts "may deny" motions seeking relief for unpreserved claims, and could excuse defaults "in the interest of justice and for good cause shown." *Brown*, 319 F.3d at 169-70. The relevant rule was later modified to make default mandatory if its provisions were met, absent a showing of a "miscarriage of justice." *Id.*

In its review of prior cases in which the rule, in prior or then-current form, was invoked to bar a unanimity claim, the Fourth Circuit noted that in some cases the rule's exceptions were invoked, and in some cases they were not. It drew no distinction between them, reasoning:

> [T[he state MAR courts have not consistently applied the bar to unanimity claims raised by defendants … We suspect that this may well have been due to the fact that state MAR courts, prior to 1996, had discretion in their ability to reach the merits of otherwise procedurally defaulted claims. ***But, in the end, it matters little why the bar has not been regularly and consistently applied by state MAR courts to unanimity claims.*** Because it has not been, the state MAR court decision barring review of Brown's claim on the merits was not based on an adequate and independent state law ground.

*Brown*, 319 F.3d at 175.

Adequacy depends on how much value the state places on finality when a particular claim is subject to forfeiture. The animating interest is "comity." *Justus v. Murray*, 897 F.2d 709, 713 (4th Cir. 1990). "Comity," however, "is a two-way street, requiring a delicate balancing of sometimes-competing state and federal concerns." *Thomas v. Davis*, 192 F.3d 445, 454 (4th Cir. 1999). When a State's treatment of similar claims in similar postures is not uniform, the balance tips towards ***federal*** interests in protecting rights subject to default.

*Duck* and *Allen* establish that the Commonwealth places a higher value on adjudicating the merits of colorable vindictive prosecution claims than on strict enforcement of Rule 5A:18. Under the circumstances, Rule 5A:18 flunks the adequacy test.

        2.       *Rule 5A:18 Is Not "Independent"*

This Court may also review the merits because the Court of Appeals' resolution was not "clearly and expressly" independent of federal constitutional law. *Conaway v. Polk*, 453 F.3d 567, 583 (4th Cir. 2006) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)). A resolution is not "independent" if it is "interwoven" with federal law. *See Coleman*, 501 U.S. at 735.

It is appropriate to "look to the procedural posture of the decision" when evaluating independence. *See Skipper v. French*, 130 F.3d 603, 611 (4th Cir. 1997). Rule 5A:18 was invoked within a federal law crucible. When Wolfe petitioned the U.S. Supreme Court, he argued that the 2017 decision was in conflict with *Class*, which held that a vindictive prosecution claim cannot be waived by a guilty plea. The Commonwealth argued then, as it will argue now, that Rule 5A:18 provided an adequate and independent bar that precluded Supreme Court review. *See* 2018 WL 6012696, at *5 (U.S. Nov. 13, 2018). The Supreme Court granted cert., vacated the judgment, and directed the Court of Appeals to reconcile its opinion with the holding of *Class*. Ex. J.

Following remand, in supplemental briefing requested by the Court of Appeals, Wolfe framed the issues in terms of *Class* and the Supreme Court's remand to apply *Class*:

> This Court, in its original ruling rejecting his appeal of the vindictive prosecution, cited to, quoted, and relied on Rule 5A:18. If that ruling had been correct, the U.S. Supreme Court would not have accepted jurisdiction, vacated that decision, and remanded this case for further proceedings.
> 
>         \*
> 
> Under *Class*, Wolfe is entitled to appeal his guilty plea because his claim for vindictive prosecution challenges the Commonwealth's authority to prosecute. A vindictive prosecution claim falls within the rare category of claims that, if proven on their merits, would preclude the prosecution[.]

Ex. Q at 4, 5. Ultimately, the question Wolfe presented was whether, in light of the teaching of *Class*, Rule 5A:18 could bar Wolfe's vindictive prosecution claim. *Id.* at 1; *Skipper*, 130 F.3d at 611 (when evaluating independence, court may consider the "motion papers before the court").

The Court of Appeals' 2019 opinion answered that question. It recognized that under *Class*, Wolfe's guilty plea did not waive his vindictive prosecution claim. Ex. K at 10. As such, the foundation of its decision was unquestionably "interwoven" with and "depend[ed]" on, a "federal constitutional ruling." *Coleman*, 501 U.S. at 735; *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

The court then claimed that "the waiver under Rule 5A:18 is more expansive than the waiver occasioned by a defendant's guilty plea," providing, in its view, a separate basis to decline merits review. Ex. K at 9. Taken together, the court applied *Class* and explicitly held that due process ***precludes*** a finding that a guilty plea waives a vindictive prosecution claim, and implicitly held that due process ***permits*** a finding that pre-plea conduct can forfeit the same claim. *Id.* at 9-10; *Ake*, 470 U.S. 74-75 (decision may "implicitly" depend on a federal ruling). By answering the federal question Wolfe presented, the court's disposition was interwoven with federal law.

### C.     Cause And Prejudice Excuse Any Default

This Court may review the merits of a defaulted claim upon a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *See Brown*, 319 F.3d at 169. The Fourth Circuit recognizes that "ineffective assistance of counsel may constitute 'cause' for a procedural default." *Weeks v. Angelone*, 176 F.3d 249, 273-74 (4th Cir. 1999). If Wolfe's well-founded claims receive no merits ruling, prejudice is met.[3]

---

[3] Though Wolfe did not present ineffective arguments in Virginia, the Court may hear them because Virginia law bars such arguments on direct appeal, and Wolfe was not appointed state habeas counsel and did not otherwise retain state habeas counsel. *See Chamberlain v. Clarke*, 2021 WL 4487606, at *6 (W.D. Va. Sept. 30, 2021) (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).

### 1.   *If This Court Finds A Forfeiture, Trial Counsel Was Deficient*

As Wolfe's counsel recognized, the key Virginia case on vindictive prosecution is *Duck*. In Section II(A), above, Wolfe provided extensive citations to the record regarding counsel's discussions of *Duck* in briefing and at the hearing. In Wolfe's view, a proper application of Virginia law to that record shows that Rule 5A:18's minimum standards were satisfied. But if this Court declines to reach that issue, or otherwise disagrees, then counsel was constitutionally deficient.

Counsel could have better emphasized *Duck*'s key passages explicitly rejecting the Commonwealth's contention that only an increase in maximum sentencing mattered. Though she correctly argued there "has never been a case" ***supporting*** the Commonwealth's argument that a defendant initially exposed to the death penalty can never satisfy *Blackledge*, she did not expressly note that *Duck* had ***rejected*** that argument, because it permits consideration of enhanced minimum sentencing and a greater penalty range. Ex. C at 169. Counsel's failure to invoke the relevant passages from *Duck* was not a "tactical" decision. *United States v. Freeman*, 24 F.4th 320, 326-27 (4th Cir. 2022) (en banc) ("unreasonable" decision is not "tactical" decision warranting deference). Indeed, the motion for reconsideration conceded the omission was not strategic:

> [N]one of the parties, including this Court, considered the clear language of binding Virginia precedent. Despite being cited in both parties' pleadings and oral arguments, nobody referred to critical language in *Duck v. Commonwealth* . . ., which directly contradicts this Court's ruling.

Ex. P at 2-3. If counsel actually failed to preserve these arguments, her performance fell below an objective standard of reasonableness. *See, e.g.*, *United States v. Carthorne*, 878 F.3d 458, 466-67 (4th Cir. 2017) (counsel is ineffective when ignorance of the law leads to a failure to object to a sentencing enhancement) (citing *United States v. Williamson*, 183 F.3d 458, 463 n.7 (5th Cir. 1999) ("Failure to raise a discrete, purely legal issue, where the precedent could not have been more pellucid and applicable, denies adequate representation.").

At a minimum, counsel should have presented the motion for reconsideration containing the dispositive passage for disposition. *See Freeman*, at 326-27. The Court of Appeals later held this failure gave rise to a forfeiture under Rule 5A:18. Ex. K at 9.

       *2.*    *If This Court Finds A Forfeiture, Wolfe Has Been Prejudiced*

The trial court held that Wolfe had not demonstrated vindictive prosecution because he faced the death penalty in both proceedings, but *Duck* rejects that rationale. That Wolfe would have satisfied *Duck's* actual standard is clear. As described in Section I(A), the new charges satisfied *Duck's* standard by dramatically increasing Wolfe's minimum sentencing exposure and the range of penalties to which he was subject. If this Court finds a forfeiture, it should recognize that if the trial court was timely presented with *Duck's* most persuasive passage, then Wolfe would likely have prevailed on the merits, and was thus prejudiced.

## III.    IF THIS COURT DECLINES TO REACH THE MERITS, THE SIXTH AMENDMENT HAS NECESSARILY BEEN VIOLATED

If this Court declines to reach the merits, it can only be because Wolfe's counsel fell below constitutional standards. Either way, Wolfe's conviction should be vacated.

### A.    *Trial Counsel Fell Short Of Sixth Amendment Requirements*

Assistance is constitutionally ineffective when (1) counsel's performance was deficient, meaning it "fell below an objective standard of reasonableness" and (2) counsel's deficient performance was prejudicial, *i.e.*, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). Where, as here, the state court did not reach a preserved claim, "a federal court must assess the claim de novo." *Monroe*, 323 F.3d at 297.

In support of his cause-and-prejudice showing in Sections II(C), Wolfe explained that if this Court finds trial counsel did not satisfy Virginia's preservation requirements, she was

constitutionally ineffective. The same arguments establish a violation of the Sixth Amendment: the showing under the "cause" element satisfies *Strickland's* first prong, and the showing of "actual prejudice" from the error establishes a "reasonable probability" of prejudice under the second.

### B.  Plea Counsel Fell Short Of Sixth Amendment Requirements

A plea is involuntary if counsel erroneously advises the accused that despite pleading guilty his appellate rights are reserved, or fails to take reasonable steps to avoid a waiver before advising defendant to plead guilty. *See, e.g.*, *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (plea involuntary where counsel "erroneously informed White that he could appeal the denial of his suppression motion notwithstanding the failure of the written plea agreement" to reserve claim); *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017) (habeas relief warranted "when the action, or *inaction*, of counsel prevents petitioner from making an informed choice") (citing cases).

If such misadvice is a "but-for" cause of a guilty plea, and it would have been "rational" to forego the plea, *Strickland's* two prongs are satisfied. *See United States v. Akinsade*, 686 F.3d 248, 255-56 (4th Cir. 2012) (plea involuntary if misadvice was "a 'but for' cause" of the defendant "entering the guilty plea"); *United States v. Akande*, 956 F.3d 257, 264 (4th Cir. 2020).

#### 1.  Plea Counsel Unreasonably Advised Wolfe

As Wolfe will explain in a forthcoming declaration, and as the evidence will support, he reluctantly entered into his plea bargain based on his plea counsel's advice on the understanding that despite pleading guilty, his vindictive prosecution could be heard on the merits via appeal. He was not advised that arguable errors by his trial counsel could or would bar a future ruling on the merits. At a minimum, if properly advised, Wolfe would have insisted that the motion to reconsider the trial court's vindictive prosecution holding be presented for ruling. Doing so would have preserved his best argument for appeal, and likely caused his release altogether.

Wolfe also understood that his prosecutorial misconduct claim was not waived by his guilty plea. Absent this understanding, Wolfe would have insisted that this claim be carved out as a condition to his plea. In fact, neither of Wolfe's claims were resolved on the merits. By advising Wolfe to plead guilty without correctly advising him of the risks, and by failing to take reasonable steps to perfect the record for appeal, plea counsel's advice was deficient. *Brown v. United States*, 2014 WL 12695381, at *5 (D.S.C. 2015) (advice deficient; "Despite failing to arrange for a conditional plea, [counsel] advised Petitioner that by pleading guilty he would reserve the right to challenge the Court's denial of his suppression motion."); *Mahrt*, 849 F.3d at 1170.

### 2. *Plea Counsel's Misadvice Was Prejudicial*

When analyzing prejudice, courts do not require a showing that rejecting a plea in favor of another path would have resulted in acquittal, but that doing so would have been "rational." *See Akande*, 956 F.3d at 264. But for the misadvice, Wolfe would have rejected his plea, a rational decision because he would have preserved his powerful claims, his top strategic priority. *Akande*, 956 F.3d at 264-65 (misadvice regarding defendant's "top strategic priority" prejudicial).

For the reasons stated at length in Section I, if Wolfe had unequivocally preserved his vindictive prosecution claim, there is a reasonable probability he would have prevailed at trial or on appeal. Plea counsel's failure to advise Wolfe not to plead guilty until his reconsideration motion was presented for ruling, and without warning Wolfe that potential errors by prior counsel might preclude a merits ruling, prejudiced Wolfe.

Plea counsel's advice also prejudiced Wolfe because he should not have advised Wolfe to accept any plea which could preclude him from obtaining relief due to the misconduct relating to the Owen Barber "interview." In both its 2017 and 2019 opinions, the Court of Appeals held that Wolfe's unconditional plea prevented a ruling on the merits. Ex. E at 2-3; Ex. K at 10.

Entering an unconditional plea prejudiced Wolfe. Based on the gravity of the misconduct (which this Court recognized in *Wolfe III*), such a challenge was well-founded, so it would have been rational for Wolfe to reject an unconditional plea. Whether the government would have entertained a conditional plea is not the focus. *See Brown*, 2014 WL 12695381, at *6 ("the Government contends … [it] would not have consented to such a conditional plea in this case. However, the Court need not reach or address the Government's self-serving argument"). The focus is on whether "the erroneous advice of counsel was "a 'but for' cause" of the guilty plea, *see id.* (citing *Akinsade*, 686 F.3d at 255), and that the unconditional plea accepted prejudiced Wolfe.

Prejudice is satisfied here because, while a guilty plea extinguishes most misconduct claims, the Fourth Circuit recognizes that misconduct claims at the level of the Barber interview are preserved. Courts may set aside a plea if "(1) some egregiously impermissible conduct (say, threats, *blatant misrepresentations*, or untoward blandishments by government agents) antedated the entry of his plea and; and (2) the misconduct influenced his decision to plead guilty or … was material to that choice." *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013).

This Court condemned the Commonwealth's actions as to Barber in *Wolfe III*, and Wolfe adopts and incorporates those findings. *Fisher* considered similar misconduct. Notably, *Fisher* relied extensively on *Ferrara v. United States*, 456 F.3d 278, 293 (1st Cir. 2006) where, as here, the misconduct was directed at "the government's **star witness** with respect to" guilt, and was sufficiently egregious to overcome a plea. 456 F.3d at 297.

As in *Fisher* and *Ferrara*, this Court's findings in *Wolfe III* confirm that Wolfe's claim does "not depict some garden-variety bevue but, rather, paint a grim picture of blatant misconduct." *Ferrara*, 456 F.3d at 293. The conduct went to "the heart of the prosecution's case," which had depended, during the first trial, on Barber's implication of Wolfe in a murder-for-hire

scheme. That heart was pierced during federal habeas proceedings. It follows that the Commonwealth's intimidation tactics "strike[] at the integrity of the prosecution as a whole," and "tinged" all subsequent proceedings, satisfying *Fisher's* misconduct prong. 711 F.3d at 462, 466.

The misconduct also satisfies *Fisher's* second prong. As in *Fisher*, the misconduct influenced Wolfe's "entire approach" to the case, and if it had not taken place, "there is a reasonable probability" Wolfe would not have pled guilty. *Id.* at 467. Wolfe would have reasonably based his retrial strategy around the testimony and evidence that succeeded in the federal habeas proceedings, which featured Barber's testimony, as that strategy was effective.

It is also reasonable to conclude that Wolfe's calculus in deciding whether to plead guilty was heavily influenced by his inability to obtain Barber's testimony at retrial. There can be no reasoned doubt that the Commonwealth's threats against Barber (i) influenced Barber's decision to subsequently plead the Fifth; and (ii) influenced Wolfe's belief that Barber would continue to plead the Fifth at Wolfe's retrial, denying him critical exculpatory evidence. This Court has already found that these effects were the point of the Barber visit. *Wolfe III*, 2012 WL 13103658, at *13.

Because there is a reasonable probability the result would have been different, Wolfe establishes prejudice, and with it a violation of the Sixth Amendment.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

This Court should grant this petition, vacate Wolfe's conviction, and grant Wolfe his unconditional release. This Court should also find, because of the ceaseless nature of the Commonwealth's misconduct, and because new misconduct immediately followed this Court's prior habeas grant, that extraordinary circumstances bar retrial on any charge filed by the Commonwealth to date, and on any other homicide, weapons, drug, or similar charges stemming from or related in any way to the death of Mr. Petrole, and other relief the Court sees fit to order.

June 22, 2022

Respectfully submitted,

/s/ Eugene J. Rossi

Sylvia H. Walbolt*
James E. Parker-Flynn*
**CARLTON FIELDS, P.A.**
215 South Monroe Street, Suite 500
Tallahassee, Florida 32301-1866
Telephone:  (850) 224-1585
Facsimile:  (850) 222-0398
swalbolt@carltonfields.com
jparker-flynn@carltonfields.com

Scott M. Abeles*
Eugene J. Rossi, Va Bar No. 93136
**CARLTON FIELDS, P.A.**
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007-5208
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8100
sabeles@carltonfields.com
grossi@carltonfields.com

David A Karp*
Rachel A. Oostendorp*
**CARLTON FIELDS, P.A.**
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136-4118
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055
dkarp@carltonfields.com
roostendorp@carltonfields.com

*Pro Hac Vice Applications To Follow

*Attorneys for Petitioner*

## ATTORNEY'S VERIFICATION

I declare under the penalty of perjury under the laws of the United States of America that, upon information and belief, this Petition for Writ of Habeas Corpus by Prisoner in State Custody is true and correct.  Executed on June 22, 2022.

/s/  Eugene J. Rossi

## EXHIBIT LIST

| Exhibit | Document | Date |
|---------|----------|------|
| A | Motion to Dismiss Indictments Constituting A Vindictive Prosecution | Nov. 28, 2012 |
| B | Commonwealth's Response to Defense Motion to Dismiss Indictments Constituting A Vindictive Prosecution | Dec. 10, 2012 |
| C | Hearing Transcript on Motion to Dismiss Indictments Constituting A Vindictive Prosecution | Dec. 11, 2012 |
| D | Motion to Dismiss Indictments for Prosecutorial Misconduct | Dec. 4, 2012 |
| E | Order Denying Petition for Appeal (Va. Ct. App.) | May 10, 2017 |
| F | Petition for Appeal to Virginia Supreme Court | June 9, 2017 |
| G | Wolfe Plea Agreement Form | March 22, 2016 |
| H | Petition for Appeal to Court of Appeals of Virginia | Jan. 30, 2017 |
| I | Order Denying Petition for Appeal (Va.) | Feb. 5, 2018 |
| J | *Wolfe v. Virginia*, 139 S. Ct. 790 (2019) (granting petition for certiorari) | Jan. 7, 2019 |
| K | Order Denying Petition for Appeal (Va. Ct. App. 2019) | Sept. 20, 2019 |
| L | Order Refusing Petition for Appeal (Va. 2020) | Sept. 3, 2020 |
| M | *Wolfe v. Virginia*, 141 S. Ct. 2794 (2021) (denying petition for certiorari) | June 21, 2021 |
| N | Transcript of Interview Between Detective Sam Newsome, Richard Conway, Paul Ebert at Owen Barber | Sept. 11, 2012 |
| O | Hearing Transcript on Bail Hearing | Sept. 14, 2012 |
| P | Motion to Reconsider JW-2012-31 to Dismiss Indictments Constituting A Vindictive Prosecution | Oct. 23, 2014 |
| Q | Reply to Commonwealth's Supplemental Opposition to Petition for Appeal to Court of Appeals of Virginia | April 12, 2019 |