UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

JUSTIN MICHAEL WOLFE,

      Petitioner,

v.                                            CIVIL CASE 1:22-CV-700

HAROLD W. CLARKE, DIRECTOR,
VIRGINIA DEPARTMENT OF
CORRECTIONS,

      Respondent.

---

## AMENDED PETITION FOR A WRIT OF HABEAS CORPUS

---

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................................... 6

    A.    Wolfe Obtains Habeas Relief For A Conviction Condemned As "Abhorrent To The Judicial Process" ................................................................ 6

    B.    The Commonwealth Retaliates By Intimidating Barber Into Silence ................... 7

    C.    The Commonwealth Retaliates By Tripling The Charges Against Wolfe ............. 8

    D.    Following The Commonwealth's Interview, Barber Refuses To Testify In Wolfe's State And Federal Proceedings ................................................ 9

    E.    The Virginia Trial Court Allows The Vindictive Prosecution To Proceed ......... 10

    F.    The Virginia Court Of Appeals Arbitrarily Withholds Relief .............................. 11

    G.    Barber's New Declaration Confirms Wolfe's Actual Innocence And That Barber Was Intimidated Into Refusing To Testify In Wolfe's Favor At Retrial ......................................................................................... 12

    H.    Additional Evidence Of Wolfe's Actual Innocence, Previously Credited By This Court, Is Consistent With Barber's New Declaration................................. 13

LEGAL STANDARD................................................................................................ 14

ARGUMENT AND GROUNDS FOR RELIEF......................................................... 15

I.    THE COMMONWEALTH VINDICTIVELY PROSECUTED WOLFE ...................... 15

    A.    The Commonwealth "Upped The Ante" After Wolfe Obtained Habeas Relief...................................................................................... 15

    B.    The Commonwealth Failed To Rebut The Presumption Of Vindictiveness ........ 19

II.    BECAUSE WOLFE SATISFIES THE ACTUAL INNOCENCE GATEWAY, THIS COURT IS AUTHORIZED TO REACH THE MERITS OF HIS CLAIMS......... 20

## **TABLE OF CONTENTS**
(continued)

*Page*

A.    Barber's April 12, 2023 Declaration Is New Evidence Not Available At The Time Of Wolfe's Guilty Plea ............................................................................. 21

B.    The Evidence Powerfully Supports Wolfe's Factual Innocence ......................... 22

C.    Evidence Of Government Misconduct Described By Barber And Confirmed By The Record Further Supports A Finding Of Actual Innocence ..................... 24

III.    THE COMMONWEALTH'S INTIMIDATION OF BARBER VIOLATED WOLFE'S RIGHT TO DUE PROCESS .......................................................... 25

A.    The Elimination Of A Key Defense Witness Violated Wolfe's Due Process Rights ............................................................................................................... 26

B.    The Suppression Of Barber's Exculpatory Testimony Violated Brady ............... 26

C.    Wolfe's Guilty Plea Does Not Preclude This Challenge ...................................... 27

IV.    EQUITABLE TOLLING ............................................................................... 29

V.    WOLFE REQUESTS AN EVIDENTIARY HEARING ................................. 29

VI.    CONCLUSION AND REQUEST FOR RELIEF ........................................... 30

ATTORNEY'S VERIFICATION ................................................................... 31

CERTIFICATE OF SERVICE ...................................................................... 32

EXHIBIT LIST ............................................................................................ 33

# **TABLE OF AUTHORITIES**

*Page*

## **Cases**

*Banks v. United States*,
    920 F. Supp. 688 (E.D. Va. 1996) ...................................................................28

*Blackledge v. Perry*,
    417 U.S. 21 (1974) ..................................................................................2, 15

*Brady v. Maryland*,
    373 U.S. 83 (1963) .....................................................................................26

*Brady v. United States*,
    397 U.S. 742 (1970) ...................................................................................27

*DeShields v. Snyder*,
    829 F. Supp. 676 (D. Del. 1993) .....................................................................31

*Duck v. Commonwealth*,
    383 S.E.2d 746 (Va. Ct. App. 1989) ....................................................2, 17, 20

*Ferrara v. United States*,
    456 F.3d 278 (1st Cir. 2006) ..........................................................................28

*Finch v. McKoy*,
    914 F.3d 292 (4th Cir. 2019) ...................................................................20, 24

*Hash v. Johnson*,
    845 F. Supp. 2d 711 (W.D. Va. 2012) ...............................................21, 23, 24

*House v. Bell*,
    547 U.S. 518 (2006) ..................................................................................5, 21

*Lisker v. Knowles*,
    463 F. Supp. 2d 1008 (C.D. Cal. 2006), *abrogated on other grounds, Lee
    v. Lampert,* 610 F.3d 1125 (9th Cir. 2010) .....................................................24

*Lively v. Ballard*,
    2017 WL 4176230 (S.D. W. Va. Sept. 21, 2017) ...........................................26

*Lucky v. Calderon*,
    86 F.3d 923 (9th Cir. 1996) ..........................................................................30

## TABLE OF AUTHORITIES

(continued)

*Page*

*Luna v. Secretary, Department of Corrections,*
    2023 WL 2456510 (M.D. Fla. Mar. 10, 2023) ...............................................................31

*McQuiggin v. Perkins,*
    569 U.S. 383 (2013)........................................................................................20, 22

*Miller v. Angliker,*
    848 F.2d 1312 (2d Cir. 1988).............................................................................27

*Monroe v. Angelone,*
    323 F.3d 286 (4th Cir. 2003) .............................................................................15

*Moore v. Secretary Pennsylvania Department of Corrections,*
    457 F. App'x 170 (3d Cir. 2012) .......................................................................26

*Morris v. Hudson,*
    2007 WL 4276665 (N.D. Ohio Nov. 30, 2007) ................................................31

*Royal v. Netherland,*
    4 F. Supp. 2d 540 (E.D. Va. 1998), *aff'd sub nom. Royal v. Taylor,* 188
    F.3d 239 (4th Cir. 1999) ....................................................................................27

*Royal v. Taylor,*
    188 F.3d 239 (4th Cir. 1999) ..........................................................................5, 21

*Schlup v. Delo,*
    513 U.S. 298 (1995)............................................................................... *passim*

*States v. Smith,*
    478 F.2d 976 (D.C. Cir. 1973) ..........................................................................26

*Teleguz v. Zook,*
    806 F.3d 803 (4th Cir. 2015) ................................................................10, 24, 30

*Tollett v. Henderson,*
    411 U.S. 258 (1973)...........................................................................................27

*United States v. Andrews,*
    633 F.2d 449 (6th Cir. 1980) .............................................................................19

*United States v. Fisher,*
    711 F.3d 460 (4th Cir. 2013) .......................................................................28, 29

## TABLE OF AUTHORITIES
(continued)

*Page*

*United States v. Hammond*,
    598 F.2d 1008 (5th Cir. 1979) ........................................................................26

*United States v. Jamison*,
    505 F.2d 407 (D.C. Cir. 1974) ...............................................................17, 19

*United States v. Johnson*,
    410 F.3d 137 (4th Cir. 2005) ..........................................................................20

*United States v. Johnson*,
    537 F.2d 1170 (4th Cir. 1976) ............................................................ *passim*

*United States v. LaDeau*,
    734 F.3d 561 (6th Cir. 2013) ..........................................................................18

*United States v. McKinney*,
    60 F.4th 188 (4th Cir. 2023) ..........................................................................20

*United States v. Meyer*,
    810 F.2d 1242 (D.C. Cir. 1987) .....................................................................17

*United States v. Santana*,
    352 F. App'x 867 (4th Cir. 2009) ..................................................................19

*United States v. Saunders*,
    943 F.2d 388 (4th Cir. 1991) .....................................................................5, 26

*United States v. Scheer*,
    168 F.3d 445 (11th Cir. 1999) ..........................................................................6

*United States v. Teague*,
    737 F.2d 378 (4th Cir. 1984) ..........................................................................26

*United States v. Wilson*,
    262 F.3d 305 (4th Cir. 2001) .............................................................15, 18, 19

*United States v. Woods*,
    305 F. App'x 964 (4th Cir. 2009) ..................................................................20

*United States v. Wright*,
    43 F.3d 491 (10th Cir. 1994) ..........................................................................28

## <u>TABLE OF AUTHORITIES</u>
(continued)

*Page*

*Washington v. Texas*,
    388 U.S. 14 (1967) ................................................................................................26

*Williams v. Muse*,
    2014 WL 2921932 (E.D. Va. June 27, 2014) ............................................................4, 21

*Williams v. Taylor*,
    529 U.S. 362 (2000) ................................................................................................14

*Wolfe v. Clarke*,
    691 F.3d 410 (4th Cir. 2012) ............................................................................ *passim*

*Wolfe v. Clarke*,
    2012 WL 13103658 (E.D. Va. Dec. 26, 2012) .................................................... *passim*

*Wolfe v. Clarke*,
    718 F.3d 277 (4th Cir. 2013) ............................................................................7, 8, 9, 10

*Wolfe v. Clarke*,
    819 F. Supp. 2d 538 (E.D. Va. 2011) ................................................................ *passim*

*Wolfe v. Johnson*,
    565 F.3d 140 (4th Cir. 2009) ..........................................................................1, 20, 21, 29

*Wolfe v. Johnson*,
    940 F. Supp. 2d 280 (E.D. Va. 2010) ................................................................ *passim*

## <u>Statutes</u>

Virginia Code § 18.2-12.1 ...............................................................................................17

Virginia Code § 18.2-248 .................................................................................................16

Virginia Code § 19.2-303 .................................................................................................16

## <u>Other Authorities</u>

Rules Governing Section 2254 Cases in the United States District Courts, Rule
    2(c)(5) .......................................................................................................................30

# INTRODUCTION

> The Court finds [the Commonwealth's conduct] not only unconstitutional
> in regards to due process, but abhorrent to the judicial process.

*Wolfe v. Clarke,* 819 F. Supp. 2d 538, 566 n.24 (E.D. Va. 2011) *(Wolfe III)* (granting habeas relief), *aff'd*, 691 F.3d 410, 426 (4th Cir. 2012) *(Wolfe IV); see also Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009) (reversing and remanding for review of evidence of Wolfe's "actual innocence") (*Wolfe I*); *Wolfe v. Johnson*, 940 F. Supp. 2d 280, 287 (E.D. Va. 2010) ("actual innocence" gateway satisfied) (*Wolfe II*).

\*     \*     \*

After the Fourth Circuit affirmed this Court's award of habeas relief in 2012 to Petitioner Justin Michael Wolfe, the Commonwealth of Virginia retaliated. Just a day after the Fourth Circuit's mandate issued, the prosecutors this Court so harshly critiqued paid a visit in prison to Owen Barber, whose testimony at trial helped convict Wolfe, and whose recantation during habeas proceedings exonerated him. The prosecutors effectively threatened to have Barber executed if he testified on Wolfe's behalf at a retrial, while lamenting the professional "embarrassment" he had caused them. This intimidation worked, as Barber invoked his Fifth Amendment rights in preliminary state court proceedings, and stated he would refuse to testify at Wolfe's retrial if called.

Two days after the Barber interview, the prosecutors withdrew. Instead of seeking to have the case randomly assigned to a new prosecutor, they recruited an ally from Fairfax County, who quickly brought in six new charges, on top of the original three, dramatically increasing the range of potential penalties Wolfe faced. The new prosecutor did so though neither he nor anyone else had undertaken ***any*** new investigation during the ***ten year*** stretch between Wolfe's 2002 conviction and 2012, when the new charges issued.

Wolfe moved the Virginia circuit court to dismiss the indictments on textbook grounds of vindictive prosecution. Am. Pet. Ex. A. That claim turns on whether the government has retaliated against the accused ***because*** he has exercised a fundamental constitutional right, that of appeal.

Deterrence is so important to the healthy functioning of the criminal justice system that establishing a "*likelihood* of vindictiveness" and "the *apprehension* of retaliation," which "*may* deter a defendant from appealing" makes out a claim. *See United States v. Johnson*, 537 F.2d 1170, 1175 (4th Cir. 1976) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).[1]

On the face of the old and new indictments, and in light of his success in his habeas case, Wolfe readily established a presumption of vindictiveness under Virginia's leading case, *Duck v. Commonwealth*, 383 S.E.2d 746 (Va. Ct. App. 1989), which in turn interprets and applies the U.S. Supreme Court's landmark case, *Blackledge*. The Commonwealth argued its conduct could not be presumed vindictive because "a convicted capital murder defendant *cannot* be chilled from appealing" because no penalty is more severe than death. *See* Am. Pet. Ex. B at 7, 8. This implicit "death-penalty exception" to vindictive prosecution claims was not just dystopian, but irreconcilable with *Duck*, which holds that under *Blackledge*, exposure to a "greater minimum" penalty, or "penalty range," after appeal is presumptively vindictive. *Duck*, 383 S.E.2d at 748-49.

Nonetheless, the trial court accepted the prosecution's argument and denied Wolfe's motion. Am. Pet. Ex. C at 194-95. It also denied his motion to dismiss based on the neutralizing of Barber as an exculpatory witness. Am. Pet. Ex. D. In sum, following Wolfe's successful challenge, the Commonwealth intimidated Wolfe's main retrial witness into silence and tripled the charges (from three to nine) he had to defend without him. With the new misconduct having achieved its aims, Wolfe pleaded guilty to avoid a death sentence. Am. Pet. Ex. G. He was sentenced to 83 years in prison (42 suspended), and ordered to pay around $871,000.00. Am. Pet. Ex. E at 2.

---

[1] Unless otherwise indicated, all emphasis is added and internal citations and quotations omitted.

Wolfe appealed his conviction. Am. Pet. Ex. H. His appeal traveled twice through Virginia's appellate courts, including a successful petition to the U.S. Supreme Court. The bottom line, however, is that the trial court's decision was left intact on procedural grounds. In particular, the Virginia Court of Appeals claimed Wolfe forfeited a dispositive argument, and with it his constitutional rights. Am. Pet. Ex. K at 8-9. The Commonwealth's courts, consequently, left the Commonwealth's clearly unconstitutional payback unremedied. Wolfe's constitutional claims therefore present a proper vehicle for habeas relief. They unambiguously have merit, and no procedural bar prevents reaching them.

A presumption of vindictiveness follows if the government "up[s] the ante" after a successful appeal, and may be drawn from the face of the indictments. *Johnson*, 537 F.2d at 1172. The ***tripling*** of charges against Wolfe, and the new charges' far broader sentencing ranges, satisfies *Blackledge's* requirements. The Commonwealth's theory, adopted by the trial court, that a defendant who succeeds in overturning a death-penalty conviction "cannot" be vindictively prosecuted turns constitutional jurisprudence on its head, and does not rebut this presumption.

Wolfe's claim for vindictive prosecution was the centerpiece of his original Petition, filed on June 22, 2022. ECF 1. On March 6, 2023, the Commonwealth responded with its Rule 5 Answer, Motion to Dismiss, and a legal memorandum in support. ECF 6-8. On April 12, 2023, Owen Barber signed a new, sworn Declaration, witnessed by his legal counsel. Am. Pet. Ex. R., April 12, 2023 Declaration of Owen Barber ("Barber Decl."). In his Declaration, Barber states that Petitioner Justin Michael Wolfe "had nothing to do with the killing of Daniel ("Danny") Petrole." *Id.* ¶4. Barber is the confessed triggerman in Mr. Petrole's murder. Wolfe is currently in prison after pleading guilty in 2016 to, *inter alia,* first degree murder relating to Mr. Petrole's death.

To be sure, as noted, Barber previously provided (in 2005) an exculpatory affidavit and later testified in Wolfe's favor during Wolfe's habeas case in this Court in 2011. There, this Court credited and relied on his 2005 affidavit to find Wolfe satisfied the "actual innocence" standard under *Schlup v. Delo*, 513 U.S. 298 (1995) and permitted Wolfe's defaulted constitutional claims to be heard. *See Wolfe II,* 940 F. Supp. 2d at 287. This Court later relied on Barber's testimony in open court to find those claims had merit, requiring a new trial. *Wolfe III,* 819 F. Supp. 2d at 577.

Critically, Barber's exculpatory testimony was unavailable to Wolfe when Wolfe pled guilty in 2016, after both Barber and his counsel made clear in open court that Barber would invoke his Fifth Amendment rights and refuse to testify at Wolfe's retrial. As Barber's new Declaration explains, immediately after the Fourth Circuit affirmed Wolfe's award of habeas relief in 2012, the Commonwealth's prosecutors and lead investigator visited him in prison, and in a recorded interview accused him of committing perjury by testifying in Wolfe's favor during habeas, and threatened to tear up his plea bargain and retry him for capital murder, subject to the death penalty, if he testified in Wolfe's favor at his retrial. Barber Decl. ¶¶ 13-25.

This Court previously addressed this interview (though not on a full habeas record, in the context of *Schlup,* nor on the issue of Wolfe's decision to plead guilty), finding these officials had "scared Barber into invoking his Fifth Amendment right to avoid self-incrimination," and "denied Petitioner a credible direct and rebuttal witness to defend himself from the charges he faces." *Wolfe v. Clarke*, 2012 WL 13103658, *13 (E.D. Va. Dec. 26, 2012) (*Wolfe V*). In short, by the time Wolfe pleaded guilty, he had lost the key witness to his innocence because of prosecutorial misconduct.

Barber's new Declaration, provided to Wolfe about five weeks after the Commonwealth moved to dismiss his Petition, supports Wolfe's claims in several ways. Am. Pet. Ex. R. Most importantly, it is evidence that was not available to Wolfe during retrial, and because it casts

serious doubt on his factual guilt, it supports Wolfe's showing that he is "actually innocent" of the crimes of which he is charged under *Schlup*. *See Williams v. Muse*, 2014 WL 2921932, at *6 (E.D. Va. June 27, 2014) ("the Court evaluates whether the evidence is 'new' relative to the time he entered his guilty plea") (citing *Royal v. Taylor*,  188 F.3d 239, 244 (4th Cir. 1999)). Such a showing is important to Wolfe because the Virginia Court of Appeals held that Wolfe forfeited his vindictive prosecution claim, and a finding of actual innocence cures such a default. It also cures any timeliness defense offered by the Commonwealth; as it pointed out in its motion to dismiss, Wolfe's counsel appears to have miscalculated the due date for the original Petition by one day.

Barber's 2023 Declaration powerfully supports Wolfe's *Schlup's* showing, but is not the only evidence of innocence. Once the threshold requirement of new evidence is satisfied, the Court is charged with engaging a rigorous review of "all the evidence, old ***and*** new" to make "a probabilistic determination about what reasonable, properly instructed jurors would do." *House v. Bell*, 547 U.S. 518, 536-37 (2006). Here, Wolfe offers the very same "old" evidence of his innocence credited by this Court in *Wolfe II* (a decision affirmed by the Fourth Circuit), which, combined with Barber's April 2023 Declaration, makes Wolfe's *Schlup* showing unusually strong.

Barber's new Declaration also provides the missing piece in establishing that the Commonwealth violated Wolfe's due process rights, by foreclosing Wolfe from calling a crucial defense witness at his retrial. *See United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991) ("substantial government interference with a defense witness' free and unhampered choice to testify" violates due process). That is because, as discussed below, while this Court found that the Commonwealth's prosecutors' threats against Barber constituted such grave misconduct that in *Wolfe V* it ordered Wolfe released and barred further retrial, the Fourth Circuit on appeal, and the Prince William County circuit court considering the same conduct on a motion to dismiss, held

otherwise, each deeming it "speculative" as to whether Barber would have testified in favor of, or against Wolfe at his retrial, given the changing nature of his testimony between the 2002 trial and the 2011 habeas proceedings. Barber's new Declaration resolves the speculation that caused the Fourth Circuit and this Court to deny Wolfe relief, credibly establishing Barber would have testified in Wolfe's favor at retrial.

Barber's previously unavailable Declaration also supports a new and separate *Brady* violation, because Barber's testimony was exculpatory. *See, e.g., United States v. Scheer*, 168 F.3d 445, 457-58 (11th Cir. 1999) (prosecution's attempts to intimidate a "crucial prosecution witness" into testifying "correctly" violated *Brady*). It establishes further that Wolfe's guilty plea was involuntary, and should be set aside.

Through this Amended Petition, accordingly, Wolfe asserts the following claims: (i) violation of due process, via vindictive prosecution; (ii) violation of due process, via witness intimidation; and (iii) violation of due process, under *Brady*. To the extent any such claims are barred by the statute of limitations, a failure to exhaust, or other procedural default, all such claims may be heard on the merits based on Wolfe's showing of "actual innocence."

### **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

### A.    *Wolfe Obtains Habeas Relief For A Conviction Condemned As "Abhorrent To The Judicial Process"*

In 2001, a grand jury indicted nineteen-year-old Justin Wolfe on three charges – (1) conspiracy to distribute marijuana, (2) use or display of a firearm in the commission of a felony, and (3) capital murder for hire – on the Commonwealth's theory that Wolfe hired his friend and fellow marijuana-dealer, Owen Barber, to kill a supplier named Daniel Petrole. At trial, the only direct evidence against Wolfe was Barber's testimony that Wolfe hired him to kill Petrole. Wolfe was convicted of murder and other charges and sentenced to death. *Wolfe IV*, 691 F.3d at 412-13.

During habeas proceedings, evidence of extraordinary prosecutorial misconduct came to light. The prosecutors did not conduct a proper investigation, quickly concluded Wolfe was guilty, and ignored evidence that contradicted their case theory. *See id.* at 417, 426 n.9. They suppressed a mountain of exculpatory evidence. *See id.* at 418 n.7. The suppression was "entirely intentional." *Id.* at 423. They admitted they made it a practice to withhold exculpatory evidence to ensure defendants cannot "fabricate" a defense. *Id.* at 423-24. Barber recanted his 2002 trial testimony, and swore Wolfe had no involvement in the murder. This Court found his testimony "persuasive." *Id.* at 418. Barber's testimony confirmed this Court's earlier conclusion that Wolfe satisfied the actual innocence standard, as "it was 'more likely than not that no reasonable juror would have found Wolfe guilty.'" *Id.* at 414-15.

The Fourth Circuit affirmed, reiterating that the Commonwealth's conduct had been "not only unconstitutional in regards to due process, but abhorrent to the judicial process." *Id.* at 424. It reprimanded the Commonwealth for "tenaciously conceal[ing]" exculpatory evidence. *Id* at 422. It felt "compelled to acknowledge that the Commonwealth's" violations were "entirely intentional." *Id.* at 423. Describing the prosecutor's rationale for suppressing evidence – so it could not be used "to fabricate a defense" – as "flabbergasting," it found this Court had "rightly lambasted" the Commonwealth. *Id.* "We sincerely hope," the Court concluded, "that the Commonwealth's Attorney and his assistants have finally taken heed of those rebukes." *Id.* at 424.

### B.    The Commonwealth Retaliates By Intimidating Barber Into Silence

The Commonwealth did not take heed. The Fourth Circuit's mandate in *Wolfe IV* issued on September 10, 2012. The next day, the Commonwealth's Attorney, his assistant, and the lead investigator "interviewed" Barber at the Augusta Correctional Center. The officials "attempted to coerce Barber to repeat his 2002 trial testimony upon retrial – the same testimony that the district court found 'contained falsities.'" *Wolfe v. Clarke*, 718 F.3d 277, 281-82 (4th Cir. 2013) (*Wolfe*

*VI*). They suggested that Barber's testimony at habeas "was inconsistent with his trial testimony," so "he had breached his plea agreement." *Id.* at 282. They told him the supposed breach could subject him to "the death penalty." *Id.; see also* Barber Decl. at ¶¶13-30 (recounting this discussion and its impact on him); Am. Pet. Ex. N (transcript of this interview).

They also complained that the reversal of Wolfe's case "soiled" their "reputations." Am. Pet. Ex. N at 59. They invoked scripture and Barber's recently deceased mother and ill father to coerce Barber into abandoning the testimony this Court credited on habeas in favor of the judicially condemned testimony from the original trial. *Wolfe VI*, 718 F.3d at 297-98. Doing so was the "pinnacle" of the Commonwealth's misconduct. *Id.* at 295 (Thacker, J. concurring in part). Barber's Declaration explains that the threats made at this meeting caused him to exercise his Fifth Amendment rights during Wolfe's retrial proceedings, and remain quiet until now. Barber Decl. at ¶¶26-27, 31-33.

### C.    The Commonwealth Retaliates By Tripling The Charges Against Wolfe

Two days after the Barber interview, the prosecutors recused themselves. *Wolfe V*, 2012 WL 13103658, at *8. One day later, the new prosecutor told the circuit court that he had already concluded that Wolfe "was absolutely involved in this murder and planned it and caused it to occur and he did it out of greed . . . . Justin Wolfe is many things but innocent is not one of them." Am. Pet. Ex. O at 24. He admitted he had only reviewed files from the tainted first trial. *Id.*

On October 1, 2012, without new investigation, the prosecutor presented new charges to a grand jury, which returned six more indictments in addition to the original three, consisting of:

- Two new and additional drug charges;
- One new and additional capital murder charge;
- One new and additional felony murder charge;
- One new and additional charge for use of a firearm during a robbery; and
- One new and additional charge for use of a firearm in the commission of a murder.

*Wolfe VI*, 718 F.3d at 282. In sum, following habeas relief, Wolfe faced three counts of murder, three firearms charges, and three drug charges. He had faced just one of each at the original trial.[2]

### D.    *Following The Commonwealth's Interview, Barber Refuses To Testify In Wolfe's State And Federal Proceedings*

Wolfe called Barber to testify at a hearing held on October 31, 2012 in the Prince William County circuit court relating to Wolfe's motion to disqualify the new prosecutor appointed after the prior prosecutors recused themselves. By that time, an attorney, Christopher Leibig, had been appointed for him. Mr. Leibig informed the Court that Barber intended to exercise his Fifth Amendment rights, which Barber confirmed on the stand before being excused. Am. Pet. Ex. T at 94, 99, 101-04; Barber Decl. at ¶¶ 26-27 (discussing reason he took the Fifth).

In the meantime, Wolfe brought the Barber interview to this Court's attention, which had jurisdiction to enforce its habeas orders, and which ordered the Commonwealth to show cause why that meeting "does not constitute extraordinary circumstances warranting the Court to order [Wolfe's] immediate release and bar current and future prosecutions of Wolfe." *Wolfe VI*, 718 F.3d at 283. At a hearing December 13, 2012, Mr. Leibig testified that Barber intended to exercise his Fifth Amendment rights. Am. Pet. Ex. U at 39-41; *Wolfe VI,* 718 F.3d at 283-84. Mr. Leibig explained that Barber's decision not to testify was caused by Barber's meeting with the prosecutors on September 11, 2012, including the prosecutors' threat of capital murder charges. Am. Pet. Ex. U at 39-40. He testified that based on the circumstances, he would advise Barber to continue to exercise his Fifth Amendment privilege at Wolfe's retrial. *Id.* at 41. The Court also called Barber and questioned him for the limited purpose of establishing that he was unaware the interview had been tape recorded. *Id.* at 50; Barber Decl. at ¶¶ 29-30 (discussing why he took the Fifth).

---

[2] Wolfe expressly adopts and incorporates into this Amended Petition the findings in *Wolfe I—VI.*

As this Court would find, "the Original Prosecuting Team has scared Barber into invoking his Fifth Amendment right to avoid self-incrimination," and thereby "denied Petitioner a credible direct and rebuttal witness to defend himself from the charges he faces." *Wolfe V*, 2012 WL 13103658, at *13. The interview "incurably frustrated the entire purpose" of the federal habeas proceedings, and "permanently crystalized" the constitutional violations infecting Wolfe's trial, warranting Wolfe's release and a bar on a new trial. *Id.*

On appeal, the Fourth Circuit reversed this Court's ***remedy*** for the violations, asserting that a retrial bar was too severe a sanction, and that on the record at the time, the "district court's conclusion concerning the availability of Barber's testimony at a retrial" was "speculative" (a point Barber's new Declaration now resolves). *Wolfe VI*, 718 F.3d at 289-90. The Fourth Circuit did not, however, exonerate the Commonwealth, and acknowledged the misconduct "could, ***at the proper time***, constitute a separate ground for federal habeas corpus relief." *Id.* at 290. In a later, unrelated decision, the Fourth Circuit described the facts relating to the September 11 interview as follows: "In *Wolfe*, the prosecution illicitly threatened a recanting witness whose recantation had already been deemed candid and persuasive at an evidentiary hearing to impact how he would testify at Wolfe's retrial." *See Teleguz v. Zook*, 806 F.3d 803, 812 (4th Cir. 2015).

### E.    *The Virginia Trial Court Allows The Vindictive Prosecution To Proceed*

Wolfe moved to dismiss, arguing the new indictments were unconstitutionally vindictive. Am. Pet. Ex. A. In briefing and at oral argument, Wolfe identified the key Supreme Court and Virginia cases establishing that the analysis of vindictive prosecution depends on the totality of the circumstances, and expressly permits finding a presumption of vindictiveness when, following appeal, a defendant is exposed to a higher mandatory ***minimum*** penalty, or greater ***range*** in sentencing, even if a new charge or charges do ***not*** carry a more severe penalty than a prior charge. Am. Pet. Ex. A at 6-12, Am. Pet. Ex. C at 173-76, 178-79, 187-88.

The Commonwealth defended by asserting that a new prosecutor, not those castigated by this Court and the Fourth Circuit, brought the new charges. Despite conceding that the controlling Virginia case on vindictive prosecution found a presumption warranted when a defendant was subject to "an increased penalty *range*" following appeal, it also claimed that it is "unreasonable to attach any presumption of prosecutorial vindictiveness to a convicted capital felon facing death," regardless of the nature or magnitude of the new charges. Am. Pet. Ex. B at 5, 6-7. The trial court credited the latter argument, finding a presumption unwarranted because Wolfe did not face a more severe penalty than death under the new charges. Am. Pet. Ex. C at 194-95.

Wolfe also moved to dismiss the charges on prosecutorial misconduct grounds in light of the Barber interview. Am. Pet. Ex. D. The circuit court deemed that concern premature, and denied the motion. *See* Am. Pet. Ex. K at 10-11.

### F.    The Virginia Court Of Appeals Arbitrarily Withholds Relief

Concluding he had no hope of a fair trial, Wolfe pled guilty to use of a firearm in the commission of a felony, conspiracy to distribute marijuana, and murder. Am. Pet. Ex. G. He then appealed, asserting the trial court erred in accepting his guilty plea because (i) he was the target of vindictive prosecution; and (ii) the Barber interview constituted misconduct that resulted in the elimination of exculpatory evidence and rendered Wolfe's plea involuntary. Am. Pet. Ex. H at 7-11, 11-15. The Virginia Court of Appeals refused to consider these arguments, concluding that, because Wolfe's guilty plea was not conditional, Wolfe had waived them. Am. Pet. Ex. E. at 3-4.

After granting Wolfe's petition for certiorari (Am. Pet. Ex. I), the Supreme Court vacated the judgment and remanded to Virginia "for further consideration in light of *Class v. United States*," a new decision holding squarely that a guilty plea does not waive the right to assert a vindictive prosecution claim on appeal. Am. Pet. Ex. J.  On remand, the Virginia Court of Appeals held that, in light of *Class*, Wolfe *could* raise the vindictive prosecution claim despite his guilty plea. Am.

Pet. Ex. K at 10. But it claimed Wolfe forfeited the argument presented on appeal. That court also found Wolfe's prosecutorial misconduct claim waived by the guilty plea. *Id.* at 10-11.

The Virginia Supreme Court denied Wolfe's petition for appeal. Am. Pet. Ex. L. On June 21, 2021, the U.S. Supreme Court denied Wolfe's petition for certiorari. Am. Pet. Ex. M. Wolfe filed his original Petition for Habeas Relief on June 22, 2022.  ECF 1. The Commonwealth filed its Rule 5 Answer and a Motion to Dismiss on March 6, 2023.  ECF 6, 7.

### G.    Barber's New Declaration Confirms Wolfe's Actual Innocence And That Barber Was Intimidated Into Refusing To Testify In Wolfe's Favor At Retrial

On April 12, 2023, Owen Barber signed a new Declaration before his counsel, Mr. Leibig, and counsel for Wolfe received it the following day, April 13. Am. Pet. Ex. R.[3]

Barber states that "Justin had nothing to do with the killing of Daniel ("Danny") Petrole," that "[t]here was no agreement between Justin and me to kill Danny Petrole," that he "did not have any discussion, at any time, with Justin about killing Danny Petrole," and that "Justin did not know [he] was going to kill Danny." Barber Decl. ¶¶ 4, 5. He explains that, following Wolfe's successful habeas proceedings, that "if asked to testify at his retrial, [he] intended to testify consistent with [his] testimony in federal court," which had exonerated Wolfe. *Id.* at ¶12.

That changed following the Commonwealth's September 11, 2012 interview. *Id.* ¶13. Barber explains that the officials devoted themselves to talking him out of testifying as he had during the federal habeas proceedings. *Id.* at ¶¶ 14, 15-24. And he confirms that their invocation of his cooperation agreement, threat of a retrial for capital murder, insinuations about his prison

---

[3] Mr. Leibig has also submitted an Affidavit attesting to the voluntary nature of Barber's new Declaration, that he provided legal counsel to Barber in conjunction with his signing, that Barber was not offered anything in return for his Declaration, and that Barber understands his Declaration are being used in these proceedings, waiving his Fifth Amendment rights. *See* Pet. Ex. S.

privileges, and other statements were intended to cause him to repudiate the favorable testimony

provided during habeas proceedings, and implicate Wolfe, resulting in his silence ever since:

> As a result of the September 11, 2012 discussion with Conway, Ebert, and
> Newsome, I decided I was too afraid to testify any further in Justin's case.
> I did not want to be retried for capital murder and, given my confessions,
> likely sentenced to death after trial. I took the threats Conway, Ebert, and
> Newsome 100% seriously. I believe that if I had testified in Justin's favor
> at a retrial, there is a good chance I would not be alive today. At a minimum
> I'm sure my quality of life in prison would have been made worse.

*Id.* at ¶ 25. Consistent with the exercise of his Fifth Amendment rights in both state and federal

proceedings following the September 11 interview, consequently, Barber confirms that this

evidence was not available to Wolfe at the time of his plea bargain.

### H.    Additional Evidence Of Wolfe's Actual Innocence, Previously Credited By This Court, Is Consistent With Barber's New Declaration

As this Court found when adjudicating actual innocence in Wolfe's favor in 2010, there is

"considerable corroboration" of Barber's statement taking sole responsibility for the murder. *Wolfe*

*II,* 940 F. Supp. 2d at 286–87. Corroborating evidence, then and now, includes:

- A December 14, 2005 affidavit of Carl Huff, Barber's former cell mate, with whom Barber had a close relationship of trust. Am. Pet. Ex. V (R2929-2935).[4] Huff attests that while sharing a cell with Barber, Barber admitted he was not hired by Wolfe to kill Petrole and that he had not made any agreements with Wolfe regarding the murder. Am. Pet. Ex. V at ¶¶14-32, 47-48 (R2930-32, 2932-35). Barber also told Huff that he acted without any involvement of, assistance from or knowledge by Wolfe. *Id.* Huff also states that Barber told him that he decided to testify at his original trial against Wolfe because of threats made by the prosecutors and fear for his own life. *Id.* ¶¶41-42, 48 (R2933-35). According to Huff, the Prosecutors told Barber that they would seek the death penalty against him and would charge his girlfriend, Jennifer Pasquariello, as an accessory to murder, if he did not testify against Wolfe. *Id.*

- The November 3, 2005, affidavit of Jason Coleman, Barber's former roommate, confirms Barber's statement of Wolfe's innocence. Am. Pet. Ex. W (R2804). Coleman attests that Barber previously told him he acted alone in the murder of Petrole. *Id.* ¶5 (R2804). Coleman also states that he shared this information with the police when he was interviewed. *Id.*

---

[4] "R__" refers to the preexisting numbering on the exhibit, as presented to the Fourth Circuit in a Joint Appendix.

- Affidavits of Robert Lessman, a private investigator working on behalf of Wolfe's counsel, dated November 3, 2005, and November 3, 2009 corroborating sworn statements of Coleman, Huff, and Barber. Am. Pet. Ex. X (R2788-98, R3256-63).

  - Lessman confirms that he interviewed Jason Coleman twice in 2005, and that Coleman said that he told prosecutors that Barber had told him that Barber acted alone when he shot Petrole and that there had been no one else involved. Coleman further told Lessman and a colleague that Wolfe did not hire Barber to murder Petrole and that the killing was instead a robbery that had gone wrong. Am. Pet. Ex. X at R2791, ¶¶21, 22.

  - Lessman states further that Huff stated to him, in 2005, that Barber confided in Huff in detail that he acted alone in killing Petrole. Pet Ex. X at R3259-60, ¶19.

  - Lessman interviewed Barber in 2005, before Barber provided his initial affidavit exculpating Wolfe. Barber confessed that he had acted alone and had lied at Wolfe's trial. Lessman, with at the time 42 years of experience as a criminal investigator, was convinced Barber was telling the truth. Am. Pet. Ex. X at R3260-61, ¶21.

  - Moreover, in 2008 and 2009, respectively, Wolfe's investigator identified and located two additional inmates who had been friends of Barber at Wallens Ridge State Prison. These inmates said Barber had confided in them the same exculpatory version of events he told Huff, and that Barber did so long before he confessed to Wolfe's attorneys and investigator. Am. Pet. Ex. X at R3262, ¶28.

- Barber's prior consistent statements and live testimony, credited by this Court in decisions affirmed by the Fourth Circuit. *See* Am. Pet. Ex. Y, 12/14/05 Affidavit of Owen Barber, (R2914-27) (exonerating Wolfe); *Wolfe II,* 940 F. Supp. 2d at 285-87 (crediting 12/14/05 Barber affidavit in adjudicating actual innocence under *Schlup*); Am. Pet. Ex. Z (11/2/10 Barber testimony at federal habeas hearing on the merits) (R3697-3762); *Wolfe III,* 819 F. Supp. 2d at 570-71 (awarding Wolfe habeas relief following evidentiary hearing at which Barber testified, "the Court finds Barber's demeanor and candor persuasive").

## <u>LEGAL STANDARD</u>

A state prisoner may apply for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws … of the United States." *Wolfe III*, 819 F. Supp. 2d at 545 (quoting 28 U.S.C. § 2254). When a state court has resolved a federal question, a federal habeas court should grant relief if it finds the decision is "contrary to" or "an unreasonable application of" federal law, based on an independent review. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

Where "a state court has not considered a properly preserved claim on its merits, a federal court must assess the claim de novo." *Monroe v. Angelone*, 323 F.3d 286, 297 (4th Cir. 2003).

## ARGUMENT AND GROUNDS FOR RELIEF

The Commonwealth's vindictive prosecution of Wolfe was the culmination of years of misconduct. Wolfe readily meets the standard for establishing a presumption of vindictiveness under binding Supreme Court precedent. The Commonwealth's elimination of Barber from Wolfe's retrial unambiguously violated due process. No procedural bar precludes review.

## I.    THE COMMONWEALTH VINDICTIVELY PROSECUTED WOLFE

It is "well established" that a prosecutor violates due process "by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). The touchstone of this claim is a finding that a State has "upp[ed] the ante" by bringing a defendant into court to face "more serious" charges after the defendant has successfully appealed. *Blackledge*, 417 U.S. at 27-28, 29; *Johnson*, 537 F.2d at 1172 ("if the prosecutor has the means readily at hand to discourage such appeals by 'upping the ante' . . . the State can insure that only the most hardy defendants will" appeal) (quoting *Blackledge*, 417 U.S. at 27-29). Such "conduct amounts to vindictive prosecution and is unconstitutional." *Wilson*, 262 F.3d at 314.

Vindictive prosecution may be established by showing "genuine animus," or through evidence that enhanced charges "pose a realistic likelihood of 'vindictiveness' ... from which an improper vindictive motive may be presumed." *Id*. In the only decision on the merits of Wolfe's claim, the trial court found Wolfe had not established a presumption because Wolfe was not subject to a higher maximum penalty under the new set of charges. Am. Pet. Ex. C at 194-95. Its determination is squarely contradicted by Supreme Court case law, and cannot stand.

### A.    The Commonwealth "Upped The Ante" After Wolfe Obtained Habeas Relief

The circumstances immediately preceding the instigation of the six new charges bear revisiting. *See Johnson*, 537 F.2d at 1173 ("we must examine all circumstances of [the defendant's]

situation" when assessing vindictiveness). This Court "rightly lambasted" the Commonwealth for its abhorrent misconduct. *Wolfe IV,* 691 F.3d at 423. The Commonwealth "tenaciously concealed" exculpatory evidence. *Id.* at 422. Its excuses were "flabbergasting." *Id.* at 423.

The prosecutors ***admitted*** these critiques stung. While interviewing Barber, Det. Newsome claimed "we" – Newsome and the prosecutors – "all have a good reputation of integrity." Am. Pet. Ex. N. at 55-56. He added "[i]t's always disturbing when that's called into question." *Id.* at 56. Mr. Conway complained that the "reputations" of those involved had been "soiled." *Id.* at 59. The Commonwealth's officials then preceded to scare Barber out of the case, eliminating Wolfe's star witness for retrial. *Wolfe V,* 2012 WL 13103658, at *13; Barber Decl. ¶¶ 25, 31-33.

The two prosecutors withdrew within days. Their handpicked successor almost immediately thereafter reindicted Wolfe, adding six new charges. The Commonwealth has never maintained that any new investigation supported the new charges. Am. Pet. Ex. C at 161-62.

The Commonwealth's new charges "upped the ante" within the meaning of *Blackledge*. Wolfe was originally convicted of capital murder, use of a firearm in the commission of a felony, and distribution of marijuana. Even though Wolfe faced the possibility of a life sentence or the death penalty in both trials, the sentences for the original set of charges were ***not mandatory*** and could have been suspended by the trial court under Va. Code § 19.2-303.

After the new indictments, Wolfe was subject to the penalties of the original charges, but was now also exposed to a ***mandatory*** minimum punishment of 20 years and ***mandatory*** minimum life sentence if convicted of offenses involving the new charges. *See* Va. Code § 18.2-248(H1) and (H2). Specifically, the sentences for charges included in the second indictments carried a mandatory minimum sentence of 20 years for violation of subsection H1, and a mandatory

minimum life sentence for violation of subsection H2. By their mandatory nature, neither of those sentences could be suspended by the trial court under Va. Code § 18.2-12.1.

*Duck*, applying *Blackledge*, held that "[t]he fact that Duck was exposed to a greater minimum, rather than maximum, period of incarceration … does not remove his case from the protection of *Blackledge*." 383 S.E.2d at 749. What matters is whether there is a different and greater "penalty range" associated with the new charge or charges; if so, the new charge was "a more serious charge" within the meaning of the holding in *Blackledge*. *Id.* As *Duck* reasoned, "[a]n increased minimum potential period of incarceration can have the same chilling effect on a defendant's exercise of his statutory right to appeal as an increased maximum." *Id.* Indeed, even the Commonwealth conceded that *Duck* applied *Blackledge* "and found a presumption … because of an increased penalty range," not because of a higher maximum penalty. Am. Pet. Ex. B at 5.

Cases applying the same cases and principles as the trial court have reached conclusions contrary to the trial court. In *United States v. Jamison*, 505 F.2d 407 (D.C. Cir. 1974), for example, the relevant change was from second degree to first degree murder, ***both punishable by life imprisonment***. As *Jamison* explained, "*Blackledge **in no way*** relied on the fact that the increase in charge in that case was from a misdemeanor to a felony." *Id.* at 415. A difference in the ***range*** of sentences, and the higher ***minimum*** sentence threatened by the new charge, sufficed:

> It hardly seems an empty threat that the crime with which one is charged may be increased from one carrying a sentence of 'life or not less than twenty years,' the prescribed sentence for second degree murder, to one carrying a mandatory life sentence … for first degree murder.

*Id.* at 415; *see also United States v. Meyer*, 810 F.2d 1242, 1246-48 (D.C. Cir. 1987) ((though new charge did not increase potential penalty, presumption of vindictiveness was warranted)

While showing the Commonwealth "upped the ante" suffices to establish a presumption of vindictiveness, the Fourth Circuit teaches that the absence of a new investigation cements that

-17-

presumption. In *Johnson*, for example, the Fourth Circuit noted that the prosecutor "knew all of the facts essential for the new indictment before Johnson changed his plea." 537 F.2d at 1173. He only brought new charges "after Johnson successfully challenged" his conviction. *Id.* Between conviction and the new indictment, "the government discovered no new evidence to justify the additional charges." *Id.*; *see also* Am. Pet. Ex. C. at 172 (noting no evidence of new investigation).

The Commonwealth has never claimed it conducted any new investigation during the ten-year stretch between Wolfe's 2002 conviction and 2012, when the new charges were filed. Newsome testified that it did not. Am. Pet. Ex. C. at 161-62. *United States v. LaDeau*, 734 F.3d 561, 570 (6th Cir. 2013) (presumption warranted where "prosecution obtained no [new] evidence" and new charge "carries longer mandatory minimums and maximums than the" initial charge).

*Finally*, the Fourth Circuit instructs lower courts to consider whether the post-trial successful appeal resulted in a remand for a new trial on the original charges, or a bar on retrial. In *Wilson*, the Fourth Circuit canvassed Supreme Court case law and found that in "each of the decisions in which it has recognized a presumption of vindictiveness," the Supreme Court relied on its "awareness 'of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided.'" 262 F.3d at 318. When a state responds harshly to a successful appeal, the fact that the state is forced to redo its work supports a presumption.

*Wilson* found the "institutional bias" against retrying claims was not present before it. *Id.* at 319. *Johnson*, in contrast, found this bias **could** be at issue in its case, and found a presumption. *Johnson*, 537 F.2d at 1172; *accord Allen v. Commonwealth*, 549 S.E.2d 652, 654 (Va. Ct. App. 2001) ("A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining" a new trial). Wolfe was subject to retrial on the original charges, making his case what *Wilson* calls "the **typical** presumption case." 262 F.3d at 319.

-18-

The Prince William County circuit court's ruling cannot be sustained under any standard of review. The inquiry under *Blackledge* turns on retaliation following the exercise of a constitutional right and the apprehension such conduct invariably inspires. The Commonwealth's defense that convicts facing the death penalty have no right to complain about vindictive prosecution turns constitutional jurisprudence on its head. Wolfe, and those in his position, under such a holding would be taught not to bring even the most egregious misconduct to light. A presumption of vindictiveness is warranted here.

### B.    The Commonwealth Failed To Rebut The Presumption Of Vindictiveness

Once a presumption is established, "the burden shifts to the government to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315. "[O]nly objective, on-the-record explanations can suffice." *United States v. Andrews*, 633 F.2d 449, 456 (6th Cir. 1980).

Cases since *Blackledge* show the path to rebutting a presumption is narrow. In *Jamison*, the Court stated that if the government can show "the elements of the more serious crime were not present when the original charges were filed, a presumption may be rebutted. 505 F.2d at 416. The Fourth Circuit has found a presumption rebutted by "***new*** evidence." *United States v. Santana*, 352 F. App'x 867, 871 (4th Cir. 2009). *Jamison* suggests that the presumption might be rebutted if the ***impact*** of the alleged crime increases after the initial charges are filed, as when an "assault victim has died." 505 F.2d at 416-17. *Andrews* allowed that evidence "the Grand Jury was unavailable" or a showing of "previous legal impossibility" could suffice. 633 F.2d at 456 & n.10.

The Commonwealth did not offer objective evidence establishing such facts. They focused, instead, on the fact that the original prosecutors withdrew and then brought in a special prosecutor they had selected. *See* Am. Pet. Ex. B at 3; Am. Pet. Ex. C at 184-86. The trial court rightly rejected this argument. Am. Pet. Ex. C at 194. *Duck* rejected a similar argument. *See* 383 S.E.2d at 748. "[M]ost successful vindictive prosecution claims involve retaliatory prosecutions by the same

*sovereign*." *United States v. Woods*, 305 F. App'x 964, 967 (4th Cir. 2009). The "sovereign" here has always been the Commonwealth.

The Commonwealth otherwise relied on an implicit death penalty exception to *Blackledge's* coverage. Am. Pet. Ex. B at 6-7; *see also* Am. Pet. Ex. K at 3. *Blackledge*, *Duck*, and *Jamison* foreclose this argument. As the Commonwealth's defenses are uniformly meritless, this Court should find a presumption of vindictiveness that the Commonwealth failed to rebut.

## II.    BECAUSE WOLFE SATISFIES THE ACTUAL INNOCENCE GATEWAY, THIS COURT IS AUTHORIZED TO REACH THE MERITS OF HIS CLAIMS

Virginia's appellate courts declined to reach the merits by asserting a state procedural default under Rule 5A:18. Wolfe's showing of actual innocence, however, cures that default and any others identified by the Commonwealth, including the statute of limitations.

In federal habeas law, the actual innocence exception is one application of the broader "fundamental miscarriage of justice" exception to procedural default intended to ensure that "federal constitutional errors do not result in the incarceration of innocent persons." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Wolfe I,* 565 F.3d at 160.  This exception covers the full range of procedural defaults, including the statute of limitations. *See McQuiggin*, 569 U.S. at 392-93; *Wolfe*, 565 F.3d at 164; *Finch v. McKoy*, 914 F.3d 292, 294 (4th Cir. 2019). A guilty plea does not bar an actual innocence showing. *See United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005); *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023).

An actual innocence showing requires that ***part of*** the petitioner's showing be "new reliable evidence," that was not available at the time of his conviction. *See Schlup,* 513 U.S. at 324. In cases involving a guilty plea, "the Court evaluates whether the evidence is 'new' relative to the time he entered his guilty plea."  *Williams*, 2014 WL 2921932, at *6 (citing *Royal*, 188 F.3d at 244). The reviewing court then considers the total record. Because this standard "focus[es] the

inquiry on actual innocence ... the district court is not bound by the rules of admissibility that would govern at trial." *Schlup*, 513 U.S. at 327–28; *see also Hash v. Johnson*, 845 F. Supp. 2d 711, 725–26 (W.D. Va. 2012). A "petitioner is **entitled** to have a *Schlup* actual innocence issue addressed and disposed of in the" federal habeas court. *Wolfe I*, 565 F.3d at164–65.

The exception is satisfied if, "in light of new evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House,* 547 U.S. at 536-37 (quoting *Schlup,* 513 U.S. at 327).

### A.    *Barber's April 12, 2023 Declaration Is New Evidence Not Available At The Time Of Wolfe's Guilty Plea*

The testimony contained in Barber's new Declaration was not available when Wolfe pleaded guilty. Barber was called to testify twice following the Fourth Circuit's affirmance of habeas relief in *Wolfe IV,* and Barber, represented by Mr. Leibig, exercised his right not to testify both times. Am. Pet. Ex. T at 94, 99, 101-04; Am. Pet. Ex. U at 39-41. Mr. Leibig, in addition, testified that Barber's decision was directly related to his meeting with the prosecutors on September 11, 2012, including the threat of capital murder charges if he testified for Wolfe. Am. Pet. Ex. U at 39-40. Mr. Leibig also testified that he would advise Barber to exercise his Fifth Amendment privilege at any retrial of Wolfe. *Id.* at 41. As such, his exculpatory testimony in his April 2023 Declaration was not available in 2016, when Wolfe pleaded guilty.

Barber's new Declaration confirms that "[a]s result of the September 11, 2012 discussion with Conway, Ebert, and Newsome, I decided I was too afraid to testify any further in Justin's case." Barber Decl. ¶ 25. He states he "exercised my Fifth Amendment right" during retrial proceedings because he "believed the Commonwealth would act on its threats if I testified truthfully." *Id.* at ¶¶ 27, 30. He states that were he called at Wolfe's retrial, he "would have resisted testifying to the fullest extent permissible." *Id.* ¶ 32. He candidly admits that, "[i]f forced to testify"

at Wolfe's retrial, "to protect myself from the prospect of the death penalty and the loss of my privileges in the prison, I would have had no choice but to testify against Justin again, as I had at his first trial." *Id.* He explains that, "[f]rom that point in 2012 until very recently, [he] had resolved that [he] would never again offer another statement or testify in Justin's case, as [he] still believed the Commonwealth would follow through on its threats to prosecute me again." *Id.* ¶ 31.

Barber's Declaration is new evidence not available at the time of Wolfe's plea. Indeed, its unavailability was due to prosecutorial misconduct, and is why he pleaded guilty.[5]

### B.    The Evidence Powerfully Supports Wolfe's Factual Innocence

The new Barber Declaration, combined with pre-existing evidence of actual innocence, raises "sufficient doubt" about Wolfe's guilt and "justif[ies] a review of the merits of [his] constitutional claims." *Schlup*, 513 U.S. at 317; *see also Wolfe I*, 940 F. Supp. 2d at 286–88. While it is true that "tenable actual-innocence gateway pleas are rare," *McQuiggin*, 569 U.S. at 386, so too is the procedural history and facts of this case.

When this Court last found Wolfe satisfied the actual innocence standard and allowed his habeas claims to go forward in *Wolfe II*, it did so based on virtually identical evidence. *See Wolfe II*, 940 F. Supp. 2d at 282 (relying on "Barber's new version of the crime in the amended petition [exonerating Wolfe] …, an affidavit from Jason Coleman …, an affidavit from Carl Huff … and an affidavit from Wolfe's investigator, Bob Lessman"). There was, however, one key exception: by the time the Court issued *Wolfe II*, Barber had ***repudiated*** his affidavit exonerating Wolfe, given in 2005, and inculpated him again. *Id.* at 285–86 ("In April 2006, Barber sent a letter to Wolfe's

---

[5] While Wolfe's counsel has been diligent in acting to secure Barber's statement, *McQuiggin* establishes that there is "no threshold diligence requirement" that a Petitioner must overcome in presenting evidence supporting an actual innocence gateway in conjunction with a first (non-successive) petition for habeas relief in federal court. *See* 569 U.S. at 398.

lawyers, stating that his affidavit [exonerating Wolfe] had been false and that his trial testimony [inculpating Wolfe] was truthful, followed by [additional, later] affidavits" confirming the same).[6]

This Court **still** found Wolfe satisfied *Schlup*, despite the recantation, where "Barber's affidavit" exonerating Wolfe was corroborated "by way of the Huff, Coleman, and Lessman Affidavits," which were "consistent with Barber's affidavit and with each other." *Wolfe II,* 940 F. Supp. 2d at 286. Under *Schlup*, the evidence sufficed "to raise doubt in a reasonable juror's mind about the circumstances of the night of the murder," making it "more likely than not that no reasonable juror would have found Wolfe guilty beyond a reasonable doubt." *Id.* at 286-87.

The evidence now before the Court is highly similar but **stronger** than the evidence previously deemed sufficient under *Schlup* for the simple reason that Barber has not repudiated his exculpatory testimony. *See Hash*, 845 F. Supp. 2d at 728–32 (evidence there, "if anything, is stronger than *Wolfe [II]*" because, *inter alia,* the witness who recanted damning trial testimony "has not recanted his recantation, in contrast to [Barber] whose recantation was nonetheless found sufficient in *Wolfe [II]*"). For that reason alone the Court should again find Wolfe satisfies *Schlup*.

Moreover, Barber's new Declaration post-dates the Commonwealth's September 11, 2012 threats to re-prosecute him.  This Court has already adjudicated the seriousness of those threats. *See Wolfe V*, 2012 WL 13103658, at *13 ("the Original Prosecuting Team has scared Barber into invoking his Fifth Amendment right," and thereby "denied Petitioner a credible direct and rebuttal witness to defend himself from the charges he faces"); *see also Teleguz*, 806 F.3d at 812 ("In *Wolfe*, the prosecution illicitly threatened" Barber to "impact how he would testify at Wolfe's retrial.").

---

[6] By the time of Wolfe's later habeas hearing, post-dating *Wolfe II,* Barber changed positions again and testified in open court that Wolfe had nothing to do with the murder.  With an opportunity to observe Barber in person under direct and cross-examination, and to question him, this Court found Barber's testimony "credible" and "persuasive." *Wolfe III*, 819 F. Supp. 2d at 548, 570.

Barber's new Declaration, accordingly, is especially credible, since he has received no assurances from the Commonwealth, which has never withdrawn its threats.

His testimony is also consistent with contemporaneous witnesses who knew him well (his roommate, and then his cell mate) and gained nothing by offering their corroborating testimony. *See* Am. Pet. Ex. V (Huff), Am. Pet. Ex. W (Coleman); Am. Pet. Ex. X (Lessman). His contentions about the Commonwealth's misconduct are not speculative or of doubtful provenance, as they are confirmed by the Commonwealth's own recording. Finally, the absence of eye witness testimony or physical evidence tying Wolfe to Petrole's murder supports a finding of actual innocence. *Wolfe III*, 819 F. Supp. 2d at 565; *Finch*, 914 F.3d at 299 (actual innocence standard satisfied; "this is a case where there is no physical evidence implicating Finch"); *Hash*, 845 F. Supp. 2d at 730, 732.

C.    ***Evidence Of Government Misconduct Described By Barber And Confirmed By The Record Further Supports A Finding Of Actual Innocence***

In habeas cases, government misconduct is usually addressed, as Wolfe does in the next section, as substantive constitutional claims. Courts have also recognized that "evidence of police and prosecutorial misconduct is a basis upon which a petitioner can satisfy the actual innocence standard." *Hash*, 845 F. Supp. 2d at 729; *see also Lisker v. Knowles*, 463 F. Supp. 2d 1008 (C.D. Cal. 2006) (similar), *abrogated on other grounds, Lee v. Lampert,* 610 F.3d 1125 (9th Cir. 2010). Police and prosecutorial misconduct in this case – before ***and*** after Wolfe first received relief from this Court – cannot sincerely be denied. In adjudicating the question of actual innocence, the Court can and should ask why the Commonwealth's efforts have been so keenly focused on the suppression of exculpatory evidence, even after being called out for their misconduct in especially harsh terms by both this Court and the Fourth Circuit in well-publicized decisions.

An obvious explanation for the government's ceaseless efforts to deprive Wolfe of a fair opportunity to defend himself, including by engaging in the vindictive prosecution described above,

is that it cannot win a fair trial. If the Commonwealth had untainted evidence sufficient to establish Wolfe's guilt, the history of this case would not be replete with judicially condemned efforts to suppress the facts and truth. Those efforts lend further credence to the notion that "a constitutional violation," in the form of the Commonwealth's vindictive prosecution of Wolfe, and/or its suppression of exculpatory evidence, discussed next – "has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 321.

## III.    THE COMMONWEALTH'S INTIMIDATION OF BARBER VIOLATED WOLFE'S RIGHT TO DUE PROCESS

Both this Court and the Fourth Circuit recognized that at Wolfe's retrial, Barber would have been best positioned to rebut the Commonwealth's otherwise circumstantial case, since his testimony "was the only evidence that the Prosecution presented to prove [Wolfe] hired Barber to kill Petrole." *Wolfe III*, 819 F. Supp. 2d at 565; *Wolfe IV*, 691 F.3d at 424. By ejecting Barber from Wolfe's case, the Commonwealth denied Wolfe a credible direct and rebuttal witness to defend against the charges he faced. Barber could not be used by Wolfe, for example, to rebut testimony from Newsome, the Commonwealth's key investigating detective; to rebut the Commonwealth's theory that Barber did not know Petrole and had no motive to kill him; to confirm Coleman's testimony about Barber's confession that Barber had acted alone; or to provide other relevant testimony. The suppressed testimony is the very type that led to this Court's prior "actual innocence" finding.  *See Wolfe II*, 940 F. Supp. 2d at 285-87.

Barber's new Declaration ties the Commonwealth's threats to his decision, before Wolfe's plea, not to testify at Wolfe's retrial. As a result of this prosecutorial misconduct, Wolfe was forced to plead guilty. Those threats deprived Wolfe of fair, constitutional process.

### A.    The Elimination Of A Key Defense Witness Violated Wolfe's Due Process Rights

A defendant's right to present witnesses in his defense is a fundamental due process right. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). Witness intimidation crosses the line if it amounts to "substantial government interference with a defense witness' free and unhampered choice to testify," *see Saunders*, 943 F.2d at 392, as when a defense witness is improperly "driven off the stand" by the government. *Lively v. Ballard*, 2017 WL 4176230, at *20 (S.D. W. Va. Sept. 21, 2017) (citing *United States v. Teague*, 737 F.2d 378, 382–83 (4th Cir. 1984)).

The evidence confirms that the government drove Barber off the stand. The only question is whether doing so prejudiced Wolfe. *See Teague*, 737 F.2d at 382. Given Barber's centrality to whether Wolfe's guilt could be proven beyond a reasonable doubt, Wolfe was prejudiced. *See United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir. 1979) (reversing conviction where FBI agent told defense witness he would have "nothing but trouble" in pending prosecution if he persisted in testifying); *States v. Smith*, 478 F.2d 976, 979 (D.C. Cir. 1973) (similar).

### B.    The Suppression Of Barber's Exculpatory Testimony Violated Brady

Barber's new Declaration confirms the prosecutorial misconduct went beyond "crystalizing" violations recognized previously by this Court. Suppression of evidence undermining guilt is a *Brady* violation whether it involves suppressing a favorable document or favorable witness. *See Moore v. Sec'y Pennsylvania Dep't of Corr.*, 457 F. App'x 170, 180–81 (3d Cir. 2012) (where government "intimidated" an "alibi witness" from testifying and "intimidated" other witnesses "into giving perjured testimony," a "hallmark *Brady*" violation established).

Under *Brady*, suppression "of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or punishment, irrespective of the" government's good or bad faith. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Here, the Barber Declaration establishes that, absent the intimidation, Barber would have testified in complete and credible

exoneration of Wolfe at Wolfe's retrial. Barber Decl. ⁋ 33 ("But for the threats made against me by the Commonwealth's officials, I would have testified truthfully – in Justin's favor – at his retrial, as I had in federal court."). Given this Court's prior finding of "actual innocence," on similar evidence, it should have little "confidence in the outcome" of Wolfe's retrial proceedings, and vacate his plea. *See Miller v. Angliker*, 848 F.2d 1312, 1321-22 (2d Cir. 1988) (defendant allowed to challenge plea as involuntary because prosecution withheld exculpatory evidence that another person was seen near victims and arrested for assault, in violation of *Brady*).[7]

### C.    Wolfe's Guilty Plea Does Not Preclude This Challenge

While a guilty plea extinguishes most misconduct claims, a defendant may still challenge the voluntary and intelligent character of the guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The validity of a plea of guilty depends on whether it was both intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970). As a general matter, a plea is "intelligent" if the accused had the advice of counsel and understood the consequences of his plea; it is "voluntary" if it is not the product of actual or threatened physical harm, coercion, or the defendant's inability to weigh his options rationally. *See Brady*, 397 U.S. at 755-56.

*Brady* made clear, however, that this test suffices only in the "absen[ce of] misrepresentation or other impermissible conduct by state agents." *Id.* at 757. Accordingly, "even a guilty plea that was 'knowing' and 'intelligent' may be vulnerable to challenge if it was entered without knowledge of material evidence withheld by the prosecution." *Miller*, 848 F.2d at 1320; *Royal v. Netherland*, 4 F. Supp. 2d 540, 566 (E.D. Va. 1998) (failure to disclose *Brady* material

---

[7] If these claims are procedurally defaulted, Wolfe's actual innocence showing cures such default. *See Wolfe III*, 819 F. Supp. 2d at 544-45. Moreover, "any procedural default of Wolfe's Brady claim [is] otherwise excused under the separate 'cause and prejudice' standard," ass the elements of cause and prejudice overlap with the first two *Brady* factors. *Wolfe IV*, 691 F.3d at 420.

may be grounds to invalidate a guilty plea), *aff'd sub nom. Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999); *Banks v. United States*, 920 F. Supp. 688, 691 (E.D. Va. 1996).

Under Fourth Circuit law, courts may set aside a plea as involuntarily given if "(1) some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea and; and (2) the misconduct influenced his decision to plead guilty or … was material to that choice." *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013). Both prongs are satisfied here.

First, the misconduct was egregious. It was contemporaneously condemned by this Court following a hearing at which both Barber and his attorney testified, but the full scope of the misconduct has only recently become known, when Barber came forward for the first time in his new Declaration to describe the decisive impact the interview had on his willingness to testify to the true facts. This satisfies *Fisher's* first prong, which in *Fisher* was satisfied through misconduct less egregious than intimidating the sole witness who directly implicated Wolfe in the murder.

Notably, *Fisher* relied extensively on *Ferrara v. United States*, 456 F.3d 278, 293 (1st Cir. 2006) where, as here, the misconduct was directed at "the government's star witness with respect to" guilt, and was sufficiently egregious to overcome a plea. 456 F.3d at 297. As in *Fisher* and *Ferrara*, the conduct went to "the heart of the prosecution's case," which had depended, during the first trial, on Barber's implication of Wolfe in a purported murder-for-hire scheme. *Fisher*, 711 F.3d at 466. As such, the prosecutors intimidation tactics "strike[] at the integrity of the prosecution as a whole," and "tinged" all subsequent proceedings, satisfying Fisher's misconduct prong. *Id.* at 462, 466; *see also United States v. Wright*, 43 F.3d 491, 495 (10th Cir. 1994).

The misconduct also satisfies *Fisher's* second prong. As in *Fisher*, the misconduct necessarily influenced Wolfe's "entire approach" to the case, and if it had not taken place, "there

-28-

is a reasonable probability" Wolfe would not have pled guilty. *Id.* at 467, 468. Wolfe would have reasonably based his retrial strategy around this exonerating testimony. It would have been key, as the federal habeas proceedings demonstrated.

It is also reasonable to conclude that Wolfe's decision to plead guilty was directly influenced by his inability to obtain Barber's testimony at the ordered retrial. There is no reasoned doubt that the Commonwealth's threats against Barber (i) caused Barber's decision to subsequently plead the Fifth; and (ii) Wolfe's correct anticipation that Barber would continue to plead the Fifth at Wolfe's retrial, denying him critical exculpatory evidence. Because both of *Fisher's* prongs are satisfied, Wolfe's guilty plea did not extinguish his right to challenge these violations, and should be set aside as involuntary in light of them.

## IV.    EQUITABLE TOLLING

Wolfe respectfully requests that the Court equitably toll the statute of limitations as to his originally filed Petition and this Amended Petition, on grounds of actual innocence, and because declining to extend one day's grace to Wolfe, in light of the facts and history of this case, would be a miscarriage of justice.

## V.    WOLFE REQUESTS AN EVIDENTIARY HEARING

The evidence before the Court when it found Wolfe satisfied the actual innocence standard in *Wolfe II* was so powerful that the Court ruled without the need for an evidentiary hearing. The evidence before the Court is highly similar to the *Wolfe II* evidence but more persuasive, because when *Wolfe II* issued Barber had recanted his exonerating declaration, unlike here. Accordingly, this Court may find Wolfe satisfies *Schlup* without the need for an evidentiary hearing.

That said, if the Court has any doubt, the Fourth Circuit generally requires that Wolfe be afforded an evidentiary hearing. *Wolfe I*, 565 F.3d at 170 (when a witness providing the "only direct evidence implicating [a petitioner] in the murder-for-hire scheme" recants his testimony,

this recantation "strongly suggests that an evidentiary hearing may be warranted"); *Teleguz*, 689 F.3d at 325 (abuse of discretion for district court to fail to "conduct a sound and thorough analysis of" petitioner's "gateway innocence claim as required by" *Wolfe I*).

The Court may find for Wolfe on his vindictive prosecution and due process claims without an evidentiary hearing, as his claims' merits are self-evident. Despite substantial review of the case law, Wolfe's counsel has not found an example of another criminal defendant subject to a tripling of charges following a successful appeal. By that measure, it is not hyperbole to suggest Wolfe may be the most vindictively prosecuted defendant in the history of reported American criminal jurisprudence. As for Wolfe's due process claims, grounded in the Commonwealth's neutralizing of Barber, the Commonwealth's actions have already been condemned by this Court. That said, if the Court has doubt, Wolfe requests an evidentiary hearing to develop and present his claim.

## VI.    CONCLUSION AND REQUEST FOR RELIEF

This Court should grant this petition, vacate Wolfe's conviction, and grant Wolfe his unconditional release. This Court should also find, because of the ceaseless nature of the Commonwealth's misconduct, and because new misconduct immediately followed this Court's prior habeas grant, that extraordinary circumstances bar retrial on any charge filed by the Commonwealth to date, and on any other homicide, weapons, drug, or similar charges stemming from or related in any way to the death of Mr. Petrole, and other relief the Court sees fit to order.[8]

---

[8] A federal habeas petition may be signed and verified "by someone acting in [the petitioner's] behalf." 28 U.S.C. § 2242; *see also* Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(5) (petition must be "signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."). This means that "a habeas petitioner's attorney can sign and verify the petition for the petitioner." *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir. 1996); Rules Governing Section 2254 Case, 2004 Adv. Cmte. Note ("under the amended rule the petition may be signed by … someone acting on behalf of the petitioner,… for example, an attorney for the petitioner."); *see also Luna v. Sec'y, Dep't of Corr.*, 2023 WL 2456510, at *3 (M.D. Fla. Mar. 10, 2023) (petitioner's attorney may verify petition);

Dated: May 31, 2023                            Respectfully submitted,

                                               /s/  Scott M. Abeles
                                               Scott M. Abeles*
                                               Eugene J. Rossi, Va. Bar No. 93136
                                               CARLTON FIELDS, P.A.
                                               Suite 400 West
                                               1025 Thomas Jefferson Street, NW
                                               Washington, DC 20007-5208
                                               Telephone: (202) 965-8189
                                               Facsimile: (202) 965-8100
                                               sabeles@carltonfields.com
                                               grossi@carltonfields.com

                                               *Admitted *Pro Hac Vice*

                                               *Attorneys for Petitioner, Justin Michael Wolfe*

## ATTORNEY'S VERIFICATION

I declare under the penalty of perjury under the laws of the United States of America that, upon information and belief, this Petition for Writ of Habeas Corpus by Prisoner in State Custody is true and correct.  Executed on May 31, 2023.

                                               /s/  Eugene J. Rossi

---

*DeShields v. Snyder*, 829 F. Supp. 676, 678 n.2 (D. Del. 1993) (same); *Morris v. Hudson*, 2007 WL 4276665, at *9 (N.D. Ohio Nov. 30, 2007) (same).

## **VERIFICATION**

By this verification, I confirm that attorneys at the law firm of Carlton Fields acted

at my request and on my behalf in filing my Petition for Habeas Relief on June 22,

2022, and continue to act at my request and on my behalf in this matter.

4-25-23

Date

Justin Michael Wolfe

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of May, 2023, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

/s/ *Eugene J. Rossi*
Attorney

## EXHIBIT LIST

| Exhibit | Document | Date |
|---------|----------|------|
| A | Motion to Dismiss Indictments Constituting A Vindictive Prosecution | Nov. 28, 2012 |
| B | Commonwealth's Response to Defense Motion to Dismiss Indictments Constituting A Vindictive Prosecution | Dec. 10, 2012 |
| C | Hearing Transcript on Motion to Dismiss Indictments Constituting A Vindictive Prosecution | Dec. 11, 2012 |
| D | Motion to Dismiss Indictments for Prosecutorial Misconduct | Dec. 4, 2012 |
| E | Order Denying Petition for Appeal (Va. Ct. App.) | May 10, 2017 |
| F | Petition for Appeal to Virginia Supreme Court | June 9, 2017 |
| G | Wolfe Plea Agreement Form | March 22, 2016 |
| H | Petition for Appeal to Court of Appeals of Virginia | Jan. 30, 2017 |
| I | Order Denying Petition for Appeal (Va.) | Feb. 5, 2018 |
| J | *Wolfe v. Virginia*, 139 S. Ct. 790 (2019) (granting petition for certiorari) | Jan. 7, 2019 |
| K | Order Denying Petition for Appeal (Va. Ct. App. 2019) | Sept. 20, 2019 |
| L | Order Refusing Petition for Appeal (Va. 2020) | Sept. 3, 2020 |
| M | *Wolfe v. Virginia*, 141 S. Ct. 2794 (2021) (denying petition for certiorari) | June 21, 2021 |
| N | Transcript of Interview Between Detective Sam Newsome, Richard Conway, Paul Ebert at Owen Barber | Sept. 11, 2012 |
| O | Hearing Transcript on Bail Hearing | Sept. 14, 2012 |
| P | Motion to Reconsider JW-2012-31 to Dismiss Indictments Constituting A Vindictive Prosecution | Oct. 23, 2014 |
| Q | Reply to Commonwealth's Supplemental Opposition to Petition for Appeal to Court of Appeals of Virginia | April 12, 2019 |
| R | Owen Barber Declaration | April 12, 2023 |

| **Exhibit** | **Document** | **Date** |
|---|---|---|
| S | Christopher Leibig Affidavit | April 27, 2023 |
| T | Hearing Transcript | Oct. 31, 2012 |
| U | Hearing Transcript | Dec. 13, 2012 |
| V | Affidavit of Carl Huff | Dec. 5, 2005 |
| W | Affidavit of Jason Coleman | Nov. 3, 2005 |
| X | Affidavits of Robert Lessman | Nov. 3, 2005, Nov. 3, 2009 |
| Y | Affidavit of Owen Barber | Dec. 14, 2005 |
| Z | Testimony of Owen Barber at Federal Habeas Hearing | Nov. 2, 2010 |