UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JUSTIN MICHAEL WOLFE<br>    *Petitioner*,<br><br>    v.<br><br>HAROLD CLARKE, Director of Virginia<br>Department of Corrections,<br>    *Respondent*. | Case No. 1:22-cv-00700 (MSN/JFA) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Respondent's Motion to Dismiss Amended Petition for Writ of Habeas Corpus (ECF 29).[1] Justin Wolfe was convicted of capital murder and sentenced to death before obtaining federal habeas relief. The Commonwealth of Virginia decided to retry Wolfe and bring additional charges against him. Wolfe pled guilty to a subset of those charges, including murder, and faces forty-one years of imprisonment. He now seeks federal habeas relief, arguing that his plea was involuntary because his second prosecution was unconstitutionally vindictive and because prosecutors suppressed potential exculpatory testimony from a key witness. The Court cannot reach the merits of Wolfe's petition, however, because it was untimely and procedurally defaulted. Accordingly, the Court will GRANT Respondent's Motion to Dismiss.

**I.    Background**

The history of this case is voluminous and complex. The Court adopts in full the Fourth Circuit's thorough factual summaries in *Wolfe v. Johnson*, 565 F.3d 140 (4th Cir. 2009) ("*Wolfe*

---

[1] Petitioner filed a Consent Motion for Leave to File Excess Pages (ECF 33) when submitting his reply brief, requesting an enlargement to 35 pages. The Court finds there is good cause to grant the enlargement, given the voluminous record and extensive procedural history of this matter, and will grant that motion.

*I*"); *Wolfe v. Clarke*, 691 F.3d 410 (4th Cir. 2012) ("*Wolfe IV*"); and *Wolfe v. Clarke*, 718 F.3d 277 (4th Cir. 2013) ("*Wolfe VI*"). Although the Court has reviewed the entire record, it will refer to these summaries and highlight only the most pertinent facts for the purposes of this motion.

        **A.**      **Wolfe is Convicted of Capital Murder.**

In 2001, a grand jury indicted nineteen-year-old Justin Wolfe for capital murder, on the theory that Wolfe hired his friend and fellow marijuana-dealer, Owen Barber, to kill a supplier named Daniel Petrole. Barber confessed to the murder. But he told police that he and Wolfe had developed a plan to have Barber rob and murder Petrole in exchange for marijuana, $10,000, and forgiveness of Barber's debt to Wolfe. *Wolfe I*, 565 F.3d at 146.

"Barber was the prosecution's key witness" at trial. *Id.* at 144. He was "the only witness to provide any direct evidence regarding the 'for hire' element of the murder offense and the involvement of Wolfe." *Id.* In exchange for Barber's testimony, the Commonwealth dismissed its capital murder charge against Barber, and he pleaded guilty to non-capital murder and was sentenced to sixty years imprisonment, of which twenty-two years were suspended. *Id.* n.1.

At trial, Barber testified that he and Wolfe agreed on a plan to kill Petrole. On March 15, 2001, Wolfe informed Barber that Petrole would be conducting a sale that night at the apartment of Wolfe's girlfriend, Regina Zuener. *Id.* at 145. Barber testified that he and Wolfe agreed that Barber would follow Petrole home that night from the apartment and kill him. *Id.* After Wolfe told Barber that Petrole was en route to the apartment, Barber borrowed a car from a friend, J.R. Martin. *Id.* He drove to Zuener's apartment with a handgun, trailed Petrole's car after he left, and then shot Petrole after he parked at his home. *Id.* at 145-46. Afterward, Barber recounted the events to Martin, called Wolfe, and went with Martin to meet Wolfe at a nightclub. *Id.* at 146. Barber told

2

Wolfe at the club that "it was done," to which Wolfe responded, "all right." *Id.* Wolfe gave Barber "a pound and a half hug" and ordered a round of drinks. *Id.*

Martin's trial testimony corroborated Barber's. He also said he observed Barber and Wolfe speaking alone for about fifteen minutes at the nightclub that night and that Barber "told [him] to go away" while they spoke. *Id.* at 146. The next day, when Martin was purchasing marijuana from Wolfe, Martin told Wolfe, "I know what you guys did," and Wolfe forgave a $600 debt and gave him a discount on the marijuana. *Id.*

Barber eventually fled to San Diego, where he asked his former girlfriend, Jennifer Pascquirello, to bring him money from Wolfe. *Id.* at 146. Pascquirello testified that after obtaining $1,000 from Wolfe, she drove to San Diego to meet Barber, where he recounted a version of events surrounding the murder that implicated Wolfe and was consistent with Barber's trial testimony. *Id.*

Wolfe testified in his own defense. He admitted he had distributed more than a hundred pounds of marijuana, that he had discussed with friends the possibility of robbing a drug dealer, that he had spoken with Barber by phone both before and after Petrole's killing, and that he sold marijuana at a discount to Martin the day after Petrole's murder. *Id.* at 146-47. He also conceded that he owed Petrole more than $60,000 at the time of his murder, although he explained that such a large debt was not uncommon in their drug-dealing relationship. *Id.* at 147. But Wolfe denied any involvement in Petrole's murder. He hypothesized that Barber had testified falsely against him because he was angry at Wolfe for refusing to give him money after the murder and for having had sex with Pascquirello. *Id.*

A jury found Wolfe guilty of capital murder, using a firearm in the commission of a felony, and conspiring to distribute marijuana. *Wolfe IV*, 691 F.3d at 413. The trial court sentenced Wolfe

3

to death for the murder, and consecutive terms of imprisonment for the other offenses. *Id.* Wolfe was unable to obtain relief from his convictions on direct appeal or in state habeas corpus proceedings. *Id.*

### B. Wolfe Obtains Federal Habeas Relief.

Wolfe sought federal habeas relief, and after filing his petition, Barber executed an affidavit recanting his trial testimony and exculpating Wolfe. *Wolfe IV*, 691 F.3d at 413-14. Wolfe amended his petition and included additional evidence that the prosecution had suppressed evidence that should have been disclosed. *Id.* During the pendency of the petition, however, Barber backtracked on his affidavit, and Wolfe's counsel requested an evidentiary hearing to resolve credibility issues. *Id.* Another court in this district ultimately held that Barber's affidavit (which recanted his trial testimony) was sufficiently corroborated to "raise doubt in a reasonable juror's mind about the circumstances" of Petrole's murder. *Id.* at 414. And applying *Schlup v. Delo*, 513 U.S. 298 (1995), the district court held that it was "more likely than not that no reasonable juror would have found Wolfe guilty beyond a reasonable doubt," and therefore it could reach the merits of Wolfe's procedurally defaulted claims. *Id.*

The district court granted Wolfe habeas relief and vacated his convictions and sentences. Barber testified at an evidentiary hearing where, consistent with his affidavit, he explained that Wolfe was not involved in the murder. *Wolfe v. Clarke*, 819 F. Supp. 2d 538, 548 (E.D. Va. 2011). The district court found Barber's testimony was "a credible recantation of his trial testimony" and found that the prosecution had suppressed several pieces of exculpatory evidence in violation of Wolfe's due process rights. *Id.* The district court ordered that Wolfe be retried within 120 days or released unconditionally. *Wolfe v. Clarke*, 819 F. Supp. 2d 574, 577 (E.D. Va. 2011). The Fourth Circuit affirmed. *Wolfe IV*, 691 F.3d at 426.

4

### C. The Commonwealth Pressures Barber to Recommit to His Trial Testimony.

One day after the Fourth Circuit's mandate issued, on September 10, 2012, the Commonwealth's Attorney, his assistant, and the lead investigator met in person with Barber at Augusta Correctional Center. The prosecution team, which surreptitiously recorded the conversation, attempted "to get Barber to re-implicate [Wolfe] in the murder of Danny Petrole." *Wolfe v. Clarke*, 2012 WL 13103658, at *9 (E.D. Va. 2012) ("*Wolfe V*"). They "advised Barber that he would now be subject to the invalidation of his plea agreement … and could be charged with capital murder since he admittedly lied during the original Wolfe trial in state court." *Id.* They invoked "Barber's family, his religion, thoughts of Petrole," and "Barber's prison privileges." *Id.* And they suggested "that unless Barber reevaluated his testimony, Wolfe would be allowed to 'skip' responsibility for Petrole's death while Barber sat in prison." *Id.* Throughout the conversation, "Barber did not substantially vacillate from his testimony [in federal habeas proceedings] and on a number of occasions suggested that any re-prosecution of Wolfe simply focus on drug charges, rather than Petrole's murder." *Id.* The prosecutors recused themselves two days later, and a special prosecutor was appointed. *Id.* at *8.

### D. The Commonwealth Brings More Charges Against Wolfe.

On October 1, 2012, the Commonwealth presented new charges to a grand jury, which returned six more indictments in addition to the original three. The additional charges included two drug distribution charges, one capital murder charge, one felony murder charge, one charge for use of a firearm during a robbery, and one charge for use of a firearm in the commission of a murder. *Wolfe VI*, 718 F.3d at 282. Wolfe moved to disqualify the special prosecutor. *Id.* In a hearing on that motion, Barber invoked his Fifth Amendment privilege against self-incrimination, and the state court did not compel his testimony. *Id.* It scheduled a retrial. *Id.* at 283.

### E. The Fourth Circuit Permits Retrial of Capital Murder.

Shortly thereafter, Wolfe filed a motion in federal court to enforce its previous judgment granting him habeas relief, arguing that the Commonwealth had failed to either release him unconditionally or provide him with a new trial within 120 days. Wolfe also brought to the district court's attention the Commonwealth's September 2012 meeting with Barber. At a hearing on the motion, Barber's attorney testified that Barber intended to exercise his Fifth Amendment rights and that this decision was caused by his September 2012 meeting with prosecutors. ECF 23-3 at 39-40. He further testified that he would continue to advise Barber to exercise his Fifth Amendment privilege at Wolfe's retrial "unless there's a new development." *Id.* at 41.

The district court found that the Commonwealth failed to comply with its order because it had not provided Wolfe with a new trial within 120 days, and it further found that the Commonwealth's September 2012 conversation with Barber "incurably frustrated the entire purpose" of the federal habeas proceedings and "permanently crystalized" the constitutional violations infecting Wolfe's trial. *Wolfe V*, 2012 WL 13103658, at *13. It therefore released Wolfe and barred a new trial. *Id.* at *14.

The Fourth Circuit reversed the district court's remedy and permitted a retrial. In its view, "[t]he district court's conclusion concerning the availability of Barber's testimony at a retrial" was "speculative" because "Barber could decide on his own to testify, and—based on his track record—such evidence might provide support for either side." *Wolfe VI*, 718 F.3d at 289. It also noted that "under a proper grant of immunity, Barber's testimony may well be compelled." *Id.* And it explained that the state trial court could "craft any number of … remedies" to ensure that a "retrial will be properly handled." *Id.* It therefore held that "the Commonwealth may retry Wolfe on the original charges together with the new charges." *Id.* The Court noted, however, that

"Wolfe's due process claim with respect to the Barber interview could, at the proper time, constitute a separate ground for federal habeas corpus relief." *Id.* at 290.

### F.  Wolfe Pleads Guilty to Three Charges, Including Murder.

Wolfe unsuccessfully moved to dismiss the indictment. The trial court rejected his argument that the additional charges were unconstitutionally vindictive (ECF 22-3 at 194-95), and it determined that Wolfe's concerns were premature regarding prosecutorial misconduct associated with the September 2012 meeting with Barber (ECF 22-11 at 10-11).

Before his retrial, however, Wolfe pled guilty to murder, conspiracy to distribute marijuana, and use of a firearm in the commission of a felony. ECF 22-7. After admitting that he was responsible for Petrole's murder, Wolfe submitted a signed, handwritten letter at his attorney's request, which described "what happened in [his] own words" in the hope that it might "bring[] some peace to Danny's family." ECF 30-5 at 1. Wolfe admitted that he owed Petrole more than $60,000 and that he "agreed that it would be okay" if Barber robbed Petrole to obtain money and marijuana, the proceeds of which they would divide, in exchange for Wolfe forgiving Barber's debt to him. Wolfe admitted that he and Barber eventually concluded "it would be necessary to kill [Petrole] because he was probably going to resist the robbery or figure out who did it and have to get revenge." *Id.* Wolfe expressly admitted, "I am responsible for Danny's death even though I didn't pull the trigger." *Id.* at 3. He concluded the letter by acknowledging that writing the letter was "the hardest thing I have ever done because it means I have to admit what I did which contradicts what I said at trial and the position that I have taken for all of my appeals." *Id.* at 3-4. The trial court sentenced Wolfe to sixty years of imprisonment on the murder charge (with twenty-seven years suspended); three years on the firearm charge; and twenty years on the marijuana

7

charge (with fifteen years suspended); to run consecutively for a total of forty-one years of incarceration. ECF 30-1.

Wolfe appealed the plea as involuntary on grounds of vindictive prosecution and prosecutorial misconduct that eliminated Barber's exculpatory testimony, arguments that the Virginia Court of Appeals ultimately held were forfeited and waived by the plea, respectively. ECF 22-11 at 10-11. As to vindictive prosecution, the Virginia Court of Appeals held that under Rule 5A:18 of the Supreme Court of Virginia, it could not consider Wolfe's argument that the increased minimum penalty of his new charges demonstrated that his prosecution was vindictive because the trial court had not considered it. The Virginia Supreme Court denied Wolfe's petition for appeal (ECF 22-12), and the United States Supreme Court denied his petition for certiorari (ECF 22-13) on June 21, 2021.

### G.    Wolfe Seeks Habeas Relief in These Proceedings.

Wolfe petitioned for habeas relief under 28 U.S.C. § 2254 on June 22, 2022. After the Commonwealth filed its answer and moved to dismiss, Barber signed a new declaration before his counsel on April 12, 2023. *See* ECF 22-18 ("Barber Decl."). Barber's counsel also submitted a declaration attesting to the voluntary nature of Barber's declaration and that Barber waived his Fifth Amendment rights. ECF 22-19.

Barber's declaration disclaims any involvement by Wolfe in Petrole's murder. He states that Wolfe "had nothing to do with the killing," that "[t]here was no agreement between [Wolfe and Barber] to kill Danny Petrole," and that Barber "did not have any discussion, at any time, with [Wolfe] about killing Danny Petrole." Barber Decl. ¶¶ 4-5. Barber claims that following Wolfe's grant of habeas relief, he had "intended to testify consistent with [his] testimony in federal court" habeas proceedings—which disclaimed Wolfe's involvement—if Wolfe were retried again. But

8

he now explains that after the September 2012 meeting with prosecutors, he "was too afraid to testify any further in [Wolfe's] case" and that he "did not want to be retried for capital murder and, given [his] confessions, likely sentenced to death after trial." *Id.* ¶ 25.

In light of Barber's declaration, Wolfe amended his petition. The Commonwealth moved to dismiss the petition, and its motion is now ripe for resolution.

## II.  Analysis

Wolfe's petition raises two constitutional issues on the merits. First, he argues that the Commonwealth's second prosecution was unconstitutionally vindictive because it brought additional charges that had higher minimum penalties. Second, Wolfe argues that the Commonwealth's September 2012 meeting with Barber violated Wolfe's right to due process because it "denied Wolfe a credible direct and rebuttal witness." Am. Pet. at 25. Because of these constitutional errors, Wolfe contends that his plea was involuntary and should be set aside.

As a preliminary matter, however, Wolfe's claims are procedurally barred. "If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Jones v. Sussex I State Prison*, 591 F.3d 707, 715 (4th Cir. 2010) (internal quotation omitted). A state rule is "adequate" if it is "firmly established and regularly followed." *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (internal quotation omitted). The Court of Appeals of Virginia held that Wolfe's claims were not preserved under Rule 5A:18. *See* ECF 30-4 at 45 (due process claim);[2] *id.* at 191 (vindictive prosecution claim). Wolfe does not argue that Rule 5A:18 is not a "firmly established and regularly followed" state

---

[2] Wolfe did not respond in his reply brief to Respondent's argument that his due process claim was procedurally defaulted, and his Amended Petition contemplates, without arguing otherwise, that it was procedurally defaulted. *See* Am. Pet. at 27 n.7.

9

rule, so these holdings provide an adequate independent state grounds for dismissal. *See Makdessi v. Watson*, 682 F. Supp. 2d 633, 650 (E.D. Va. 2010) (holding that "Rule 5A:18 constitutes an adequate and independent ground for denying a claim").

Wolfe argues instead that his actual innocence cures the default. Actual innocence is one application of the broader "fundamental miscarriage of justice" exception to procedural default intended to ensure that "federal constitutional errors do not result in the incarceration of innocent persons." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). A guilty plea does not bar an actual innocence showing. *See United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). To make out an actual innocence claim, a petitioner must "support his allegations of constitutional error with new reliable evidence … that was not presented at trial," or in this case, not available when Wolfe entered his plea. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. In assessing the actual innocence gateway, the Court reviews the entire record and "is not bound by the rules of admissibility that would govern at trial." *Id.*

The Court cannot proceed to the merits of Wolfe's claims for two procedural reasons. First, Wolfe filed his petition after the statute of limitations had expired. Second, Wolfe has not pointed to any new evidence that supports his actual innocence gateway to overcome his procedural default. His petition must therefore be dismissed.

### A.   Statute of Limitations

Wolfe's petition has a threshold problem. It was filed one day late. Given the troubling and lengthy history of this case, one day seems insignificant. But this Court is bound to apply Fourth Circuit precedent, which is unforgiving of this tardiness—regardless of the merits of Wolfe's underlying petition—unless he can demonstrate there were "(1) extraordinary circumstances, (2)

beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Wolfe has not made this showing.

The statute of limitations for an application for a writ of habeas corpus by a person in state custody is one year from the date the judgment becomes final. 28 U.S.C. § 2244(d)(1). The parties agree that the limitations period began on June 21, 2021, when the United States Supreme Court denied Wolfe's petition for a writ of certiorari to the Supreme Court of Virginia's order declining to consider Wolfe's direct appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); ECF 30 ("Resp. Mot.") at 15; ECF 22 ("Am. Pet.") at 29. Wolfe did not seek collateral review of the state court judgment, so the limitations period was never tolled. Accordingly, the statute of limitations expired on June 21, 2022. Wolfe's petition, however, was not signed by counsel and filed until the next day.

Wolfe does not dispute that his petition was untimely; he requests instead "that the Court equitably toll the statute of limitations … because declining to extend one day's grace to Wolfe, in light of the facts and history of this case, would be a miscarriage of justice." Am. Pet. at 29. The Fourth Circuit has made clear, however, that it is "not … the length of the delay" that matters but rather "the reasons for delay in determining whether equitable tolling is appropriate." *Rouse*, 339 F.3d at 253. In *Rouse*, the en banc Fourth Circuit affirmed the dismissal of a death-penalty habeas challenge when the petition was filed one day late, notwithstanding what some members of the Circuit viewed as a "facially strong constitutional claim." *Id.* Declining to adopt a different standard that would consider the merits of the petition or the severity of the sentence, the Fourth Circuit held that a time-barred petitioner seeking equitable tolling must establish "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Id.* at 251.

11

Wolfe does not address these elements. Remarkably, even after Respondent pointed out Wolfe's failure in the motion to dismiss, Wolfe did not address the statute of limitations issue or equitable tolling at all in his reply brief. Put simply, Wolfe failed to argue any reasons for why an "extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up). Because Wolfe does not actually offer any reasons for why his petition was untimely, the Court must unfortunately assume that it was nothing more than "attorney error," which the Fourth Circuit has already held "is not an extraordinary circumstance." *Rouse*, 339 F.3d at 249. The Fourth Circuit has been clear that "[p]rinciples of equitable tolling do not extend to garden variety claims of excusable neglect," such as "a mistake of counsel" in miscalculating the limitations period. *Id.* at 246.

Nor does Wolfe provide any authority to support his cursory suggestion that "one day's grace" should be extended to him "on grounds of actual innocence." Am. Pet. at 29. To the contrary, the Fourth Circuit has held that equitable tolling should apply only in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). That is because "Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003). The Court understands *Rouse* to reject any "consideration of the merits of time-barred claims to creep into the equitable tolling analysis," including whether Petitioner can demonstrate actual innocence for purposes of overcoming procedural barriers to the merits of the petition. 339 F.3d at 251.

Because this Court is bound to apply Fourth Circuit precedent, it must dismiss Wolfe's petition as untimely.[3]

### B. *Schlup* Actual Innocence Gateway

Even if Wolfe's petition had been timely filed, the Court finds that he has not demonstrated that this is an "exceptional case[] involving a compelling claim of actual innocence." *House v. Bell*, 547 U.S. 518, 522 (2006). A threshold requirement of *Schlup* is that Wolfe present "new reliable evidence." 513 U.S. at 324. Wolfe points only to Barber's most recent declaration—which states that Wolfe had nothing to do with Petrole's murder and that Barber would have testified as such had he not been "afraid" to do so after his September 2012 meeting with prosecutors—for this purpose.

Barber's declaration is not "new" evidence. Barber claims if Wolfe were retried, he had initially "intended to testify consistent with [his] testimony in federal court" habeas proceedings—which disclaimed Wolfe's involvement. Barber Decl. ¶ 12. And Barber's version of events in his most recent affidavit is in fact consistent with the version of events he offered in his previous testimony in Wolfe's federal habeas proceedings. In other words, Barber's declaration does not offer any evidence surrounding Petrole's murder that is "new" relative to when Wolfe entered a plea.

---

[3] Respondent also argues that Wolfe did not properly execute his petition because Wolfe himself has not verified that its contents are true. Resp. Mot. at 18. 28 U.S.C. § 2242 requires that a petition be "signed and verified by the person for whose relief it is intended *or by someone acting in his behalf*." In the Amended Petition, Wolfe's counsel "declare[d] under the penalty of perjury … that, upon information and belief, this Petition for Writ of Habeas Corpus by Prisoner in State Custody is true and correct," and Wolfe himself "confirm[ed]" that his attorneys "acted at [his] request and on [his] behalf." Am. Pet. at 31. It is plainly appropriate under the statute for Wolfe's counsel to verify to his petition, but Wolfe's counsel only verified "upon information and belief" that the allegations were "true and correct." *Id.* This type of limited verification is not a "swear[ing] under penalty of perjury that the information in [the] Petition was 'true and correct' as required by the standardized form" under the Local Rules. *Harvey v. Clarke*, No. 3:21-cv-304, at *11 n.5 (E.D. Va. Mar. 25, 2022). Wolfe does not respond to this point in his reply brief. Accordingly, the attorney verification is "insufficient to make [the] contents more than pleading allegations," although the Court can resolve the timeliness issue regardless. *Id.* (citing *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001)); *see* E.D. Va. Local Civ. R. 83.4(A) (requiring a petition to contain essentially the same information as on the standardized form).

Instead, Wolfe emphasizes that what is "new" in Barber's declaration is Barber's confirmation that "[a]s a result of the September 11, 2012 discussion with [prosecutors]," he "was too afraid to testify any further in Justin's case" and therefore "would have resisted testifying to the fullest extent permissible." Barber Decl. ¶¶ 25, 32. In Wolfe's view, these statements confirm that Barber's exculpatory testimony was unavailable to him at retrial, though now it is available to the Court through Barber's declaration. Am. Pet. at 21. But the Fourth Circuit already held *before* Wolfe's guilty plea that "the availability of Barber's testimony at a retrial … is speculative." *Wolfe VI*, 718 F.3d at 289. As the Fourth Circuit explained, "Barber could decide on his own to testify," and "under a proper grant of immunity, Barber's testimony may well be compelled." *Id.* Wolfe knew the contents of Barber's potential exculpatory testimony, and he knew the Fourth Circuit had decided that the availability of that testimony could not be determined until trial. He decided to plead guilty before trial, at a time when it was "speculative" whether Barber's testimony would be available. Because Wolfe pled guilty, however, we are still left to speculate. Barber's after-the-fact declaration that his exculpatory testimony would have been unavailable at a retrial does not foreclose this speculation, nor does it change what was available to Wolfe when he entered a plea.

Because Barber's declaration is not "new reliable evidence" supporting Wolfe's constitutional claims, Wolfe cannot make a *Schlup* actual innocence showing to excuse his procedural default.

### C. Certificate of Appealability

A petitioner lacks an automatic right to appeal the dismissal of a petition under 28 U.S.C. § 2254. In order to appeal, a petitioner must obtain a certificate of appealability.

The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner

14

satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Wolfe has made the requisite showing to obtain a certificate of appealability. Although the Court has not reached the merits of Wolfe's constitutional claims, the Court finds that, were his petition timely, and were the Court able to reach the merits of those claims, they would present substantial issues upon which reasonable jurists may disagree. Given the Court's conclusion that *Rouse* forecloses equitable tolling of Wolfe's petition and that Wolfe's claims are procedurally barred, and in light of the troubling history of Wolfe's criminal proceedings and substantial nature of his constitutional claims, the Court finds that it is appropriate to grant Wolfe a certificate of appealability on these threshold issues.

*   *   *

Accordingly, it is hereby

**ORDERED** that Petitioner's Consent Motion for Leave to File Excess Pages (ECF 33) is **GRANTED**; and it is further

**ORDERED** that Respondent's Motion to Dismiss the Amended Petition for Writ of Habeas Corpus (ECF 29) is **GRANTED**; and it is further

**ORDERED** that the Amended Petition for Writ of Habeas Corpus is **DISMISSED**; and it is further

**ORDERED** that a certificate of appealability is **GRANTED**.

The Clerk is directed to close this civil action.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

March 28, 2024
Alexandria, Virginia